STATE of Iowa, Appellee,

v.

Pablo Gabriel LOPEZ, Appellant.

No. 00–0238.

Supreme Court of Iowa.

Sept. 6, 2001.

Iowa Code section 602.9206 (2001).

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, William E. Davis, County Attor-

ney, and Kelly Cunningham, Assistant County Attorney, for appellee.

Kent A. Simmons, Davenport, for appellant.

LAVORATO, Chief Justice.

Pablo Gabriel Lopez appeals from a judgment of conviction and sentence on charges of robbery in the first degree, possession with intent to deliver a controlled substance, and failure to affix a drug tax stamp. Following a bench trial, the district court found Lopez guilty of these charges.

On appeal, Lopez contends the district court abused its discretion in denying his request for substitute counsel. He also contends he should receive a new trial due to the State's failure to notify him of his right to contact the Mexican consulate. In addition, he raises a number of issues based on his allegation of ineffective assistance of counsel. Finally, he contends there was insufficient evidence to support a conviction of first-degree robbery.

We affirm.

## I. Facts.

The district court made detailed findings of fact regarding the charges, and substantial evidence supports those findings. Those facts reveal the following.

On August 18, 1999, sometime after 10:30 p.m., Lopez and Danny Burton confronted Ryan York on the steps of an apartment building in Davenport, Iowa. Lopez circled around behind York while Burton stood on the steps below and in front of York. Lopez demanded that York give up his bracelet and necklace. To reinforce that demand, Burton showed York that he had a handgun. Lopez repeated his demand. Because of the implied threat of serious injury from the gun, York laid down the jewelry, which Burton took. Burton and Lopez then left the area.

Shane Schwiesow saw and heard what happened. He testified to Lopez's demand, Burton's display of the gun to back up Lopez's demand, York's yielding to the demand, and Burton's action in picking up the jewelry.

Gary Morehouse, who was in the car that brought Lopez, Burton, and him to the apartment, testified that Burton had the gun when Burton got out of the car. Morehouse also testified that Burton said he was going to rob York.

On September 2, police detective William J. Thomas contacted Lopez at Lopez's place of employment. When Thomas asked Lopez for some identification, Lopez took out his billfold and opened it. At that point, Thomas saw what appeared to be small packets of white powdery substances. Thomas asked to search the billfold, and Lopez consented. Thomas found six individually wrapped packets of what he thought was cocaine. Tests later proved Thomas was correct. The total weight of the cocaine was 1.41 grams. There were no drug tax stamps attached to the cocaine.

## II. Proceedings.

In a trial information, the State charged that Lopez and Burton committed or aided and abetted the commission of first-degree robbery on or about August 18, 1999. *See* Iowa Code §§ 703.1; 711.1(1), (2), (3), .2 (1999). The same trial information additionally charged that on September 2, 1999, Lopez possessed crack cocaine with intent to distribute. *See* Iowa Code §§ 124.401(1)(c)(3), .206(2)(d). Finally, the trial information alleged that Lopez, on September 2, 1999, possessed, as a dealer, crack cocaine to which no appropriate drug tax stamp had been affixed. *See* Iowa Code §§ 453B.1(3)(d), .3, .7(4), .12.

All parties agree that Lopez is a Mexican national.

On December 16, the matter came before district judge James R. Havercamp for a plea proceeding. Trial was scheduled for December 20.

At the outset of the proceedings, defense counsel informed the court that Lopez wanted to change lawyers because of a breakdown in communications between Lopez and him. Counsel also advised the court that Lopez was willing to waive speedy trial if the court would appoint him a new lawyer.

The court quizzed counsel as to his preparation for the case and whether he had discussed trial strategy with Lopez. The court then gave Lopez an opportunity to tell him what the problem was.

The court subsequently denied Lopez's request for substitute counsel, noting that there was no reason to remove defense counsel and that trial was only four days away.

Following a recess, the court reconvened to address Lopez's waiver of a jury trial. The State raised no objection. Following a colloquy with Lopez, the court permitted the waiver.

The case proceeded to trial on December 20. Before hearing the evidence, district judge James E. Kelley conducted a second colloquy regarding the jury trial waiver. The court approved the waiver, determining that Lopez understood his right to a trial by jury and finding that Lopez had knowingly and intentionally waived that right.

Several days later, judge Kelley in a written decision found Lopez guilty of all charges.

The day before sentencing, Lopez filed a pro se motion for new trial. He alleged that the police were guilty of witness tampering and coercion, thereby denying him a fair trial. Lopez's attorney also filed a motion for leave to file an untimely motion in arrest of judgment. The motion alleged that the police knew Lopez was a Mexican national and that, at the time of Lopez's arrest, the police did not provide Lopez with an opportunity to contact the Mexican consulate in violation of the Vienna Convention on Consular Relations, April 24, 1963, 21 U.S.T. 77 [Vienna Convention].

Following a hearing on both motions, judge Kelley found there was sufficient evidence to support the verdicts and that there was no evidence of witness tampering or coercion.

Regarding the issues in the motion in arrest of judgment, judge Kelley concluded Lopez had no individual right to contact the consular office and therefore no right that could have been violated. Additionally, the court determined that if a right had been violated, there was no prejudice.

Thereafter, the court pronounced judgment and sentence, and this appeal followed.

### III. Request for Substitute Counsel.

**A. Scope of review.** Our review of a district court's denial of a request for substitute counsel is for abuse of discretion. *State v. Martin*, 608 N.W.2d 445, 449 (Iowa 2000). To establish an abuse of discretion, Lopez must show that "the court exercised the discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Maghee*, 573 N.W.2d 1, 5 (Iowa 1997).

**B. Applicable law.** The Sixth Amendment right to counsel does not guarantee a "meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 621 (1983). To justify the appointment of substitute coun-

sel, a defendant must show sufficient cause. *Martin*, 608 N.W.2d at 449. "Sufficient cause includes 'a conflict of interest, irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'" *Id.* (quoting *State v. Webb*, 516 N.W.2d 824, 828 (Iowa 1994)).

 In determining whether to grant a request for substitute counsel, "the court must balance 'the defendant's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice.'" *Id.* (quoting *Webb*, 516 N.W.2d at 828). The court should not permit a defendant to manipulate the right to counsel to delay or disrupt the trial. *United States v. Swinney*, 970 F.2d 494, 499 (8th Cir.1992). Additionally, the court should not allow "last-minute requests to substitute counsel ... to become a tactic for delay." *Id.; accord Webb*, 516 N.W.2d at 828. For these reasons, the court has considerable discretion in ruling on a motion for substitute counsel made on the eve of trial. *State v. Brooks*, 540 N.W.2d 270, 272 (Iowa 1995).

 Ordinarily, a defendant must show prejudice when the court denies a motion for substitute counsel "unless [the defendant] has been denied counsel or counsel has a conflict of interest." *Id.* Because Lopez does not assert either ground, he must show prejudice. *See id.*

**C. Analysis.** As mentioned, at a hearing shortly before trial, Lopez's attorney orally relayed to judge Havercamp that Lopez wanted new counsel because of a breakdown in communication. The court first noted that the trial was scheduled to begin in four days. The court then inquired of defense counsel whether he (1) had represented Lopez since Lopez was charged, (2) had investigated the facts and circumstances of the case, (3) had taken those depositions that counsel felt were appropriate, and (4) was prepared for trial. Counsel answered affirmatively to each of these questions.

The discussion continued:

COURT: You told me that there are—some of his concerns are there seems to be some discrepancies between police reports and deposition testimony.

DEFENSE COUNSEL: That's correct, your honor.

COURT: You're prepared to point those out to the jury?

DEFENSE COUNSEL: Yes, your honor.

COURT: You and he have discussed the trial strategy?

DEFENSE COUNSEL: On several occasions, your honor, yes.

COURT: And is there any disagreement with respect to that strategy? I notice that the co-defendant has been severed from trial.

DEFENSE COUNSEL: No, your honor, not that I can tell.

COURT: All right. Then why don't you tell me what's the problem, Mr. Lopez?

DEFENDANT: Yes, sir. I was ready to sign the plea agreement, but I feel that I'm guilty of the charge of robbery in first degree and also the drugs. I mean, I can pay for that, I mean in jail. I'm sorry, but I've been trying to learn with a dictionary since I'm in here.

I checked my papers just before they got me from my cell, and I seen that somebody changed the words from the depositions, and I like approval on paper, so I would like you to see those papers.

COURT: Well, this is what I pointed out. There may—what you're talking about is you've got minutes of testimony of what the—maybe some police reports of what the police are going to say, is

that right, and you've looked at those? You've got those in your packet?

DEFENDANT: Yes.

COURT: And now some depositions of those people have been taken, and word for word, they are not the same.

DEFENDANT: No, no. I'm not talking about that. I'm talking about the paper of Officer Glover, a cop, I guess, and he changed two words. I think those words are important.

COURT: I'm sure they are. [The defense attorney] will point these out to the jury. Now look, neither [the defense attorney] nor I want you to sign a plea agreement if you don't—if you don't want to sign that plea agreement and particularly if you think you're not guilty of these charges, but that has nothing to do with whether or not [the defense attorney] can adequately represent you.

He tries to get you the best deal he can. If that's not acceptable to you, that's fine. We'll go to trial, but there's nothing in the record that would convince the court that you couldn't get a fair and adequate representation from [the defense attorney]. He's a criminal attorney with many years' experience.

I don't know who I would replace at this point in time who would be better qualified to represent you. He can bring out those inconsistencies to the jury, and it's up to them to resolve which of those statements is closer to the truth.

I simply don't see a reason to remove [the defense attorney] from representing you now at this juncture, and the request to change counsel is denied, and you can go to trial Monday morning. That's all.

Lopez's primary complaints on appeal are two. First, there was a breakdown in communication. Second, judge Haver-camp failed to make a proper inquiry into whether such a breakdown had occurred.

■ When a defendant asserts a conflict of interest or when the district court "knows or reasonably should know a particular conflict exists," the court has a duty to inquire about the conflict. *State v. Watson*, 620 N.W.2d 233, 238 (Iowa 2000) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333, 346 (1980)); *State v. Atley*, 564 N.W.2d 817, 828 (Iowa 1997). However, in the context of breakdown in communication, we have not yet imposed such a responsibility on trial judges. However, according to federal authority, a duty of inquiry exists whenever a defendant requests substitute counsel. *See United States v. Webster*, 84 F.3d 1056, 1062 n. 2 (8th Cir.1996) ("[O]nce an indigent defendant requests substitute counsel, the court has a duty to inquire into the factual basis of the defendant's dissatisfaction."). This includes situations in which a breakdown in communication is asserted. *See Schell v. Witek*, 218 F.3d 1017, 1024–25 (9th Cir.2000); *Romero v. Furlong*, 215 F.3d 1107, 1113 (10th Cir.2000); *United States v. Davidson*, 195 F.3d 402, 407–08 (8th Cir.1999).

■ Here, there was a specific request for substitution of counsel. The State does not dispute that a duty of inquiry exists. What the State does assert, however, is that judge Havercamp made an adequate inquiry. For reasons that follow, we agree.

The quoted portion of the reported hearing shows that judge Havercamp did inquire of defense counsel as to whether he had adequately prepared for trial and whether there was any disagreement with the planned strategy. The judge did not, however, ask defense counsel about any communication difficulties between Lopez and him.

However, and more important, judge Havercamp did ask Lopez to explain any communication problem. In answer to this question, Lopez simply talked about his concern regarding a police report in the case. Lopez's response, if anything, only showed frustration with the proceedings and concern about the validity of certain evidence. Lopez did not tell the court that defense counsel would not be able to or was unwilling to address those concerns during the trial. Moreover, Lopez did not give any reason why he believed communication between his lawyer and him had broken down.

In *Webster*, the court faced a similar situation. In that case, the defendant told the trial court on the fourth day of trial that he wanted to discharge his appointed attorney. *Webster*, 84 F.3d at 1060. The court delved into the basis for the defendant's discontent and went so far as to allow the defendant without fear of incrimination to make any statement for the record. *Id.* at 1061. The defendant told the court that he wanted to discharge his attorney because the defendant thought the transcripts of certain pretrial hearings were inaccurate and contained statements from individuals who had not testified at the proceedings. *Id.* After finding that the offered reasons had "nothing to do with the effectiveness of [appointed counsel]," the district court denied the defendant's request to discharge his attorney. *Id.*

The appellate court affirmed the denial of substitute counsel, explaining:

> In this case, the district court acted well within its wide discretion when it declined to provide substitute counsel.... [A]s the district court correctly observed, the alleged basis for [defendant]'s complaints had absolutely nothing to do with [defense counsel]'s representation, but rather involved perceived inaccuracies in transcripts of pretrial

proceedings. Accordingly, we find that the district court correctly refused [defendant]'s attempt to obtain substitute counsel.

*Id.*

Likewise, here, the basis of Lopez's complaints had nothing to do with defense counsel's representation. Rather, those complaints involved what Lopez considered to be inconsistencies between a police report and the deposition of the officer who made the report. Judge Havercamp gave Lopez ample opportunity to explain the alleged conflict between the defense counsel and Lopez—an explanation Lopez utterly failed to give. Contrary to Lopez's contention, the judge made adequate inquiry into Lopez's complaints, and Lopez gave the judge no reason to believe that the inquiry was not adequate.

We find no abuse of discretion here.

### IV. Vienna Convention.

Lopez next contends he should have a new trial because the State failed to notify him at the time of his arrest of his right to contact the Mexican consulate pursuant to the Vienna Convention.

**A. Scope of Review.** Federal courts have routinely held that interpretation or construction of a treaty is subject to de novo review. *See, e.g., Blake v. Am. Airlines, Inc.*, 245 F.3d 1213, 1215 (11th Cir.2001). However, the meaning of the language used in a treaty is a question of law. *United States v. Page*, 232 F.3d 536, 540 (6th Cir.2000).

Here, the district court treated Lopez's motion in arrest of judgment regarding the Vienna Convention contention as a motion for new trial. Our review of a district court ruling on a motion for a new trial depends on the grounds in the motion. *Channon v. United Parcel Service, Inc.*, 629 N.W.2d 835, 859 (Iowa 2001). To

the extent the motion is based on discretionary grounds, we review it for an abuse of discretion. *Id.* But if the motion is based on a legal question, our review is on error. *Id.*

Lopez's motion with regard to the Vienna Convention raises a legal question. Therefore, regardless of the scope of review the federal appellate courts use, we review the district court's ruling for correction of errors at law. *See* Iowa R.App. P. 4; *see also Brown v. Peterson,* 185 Iowa 314, 317, 170 N.W. 444, 445 (1919) (affirming district court's construction of treaty between United States and Sweden when "no error in the record" was found).

**B. Analysis.** The Vienna Convention is a 79–article, multilateral treaty. *United States v. Jimenez–Nava,* 243 F.3d 192, 195 (5th Cir.2001). The treaty was negotiated in 1963, and the United States ratified it in 1969. *Id.* Mexico is also a signatory to the treaty. *Id.*

Article 36 of the Vienna Convention—the specific provision at issue here—provides in pertinent part:

1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:

. . . .

(b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or custody pending trial or is detained in any matter. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person con-

cerned without delay of his rights under this sub-paragraph. . . .

Vienna Convention, 21 U.S.T. at 101.

**1. Individually enforceable right.** Recently, we declined to say whether Article 36 of the Vienna Convention actually creates an individually enforceable right to consular notification. *See Ledezma v. State,* 626 N.W.2d 134, 150 (Iowa 2001). We did point out, however, that courts are divided on the issue, and we discussed the reasoning of the camps, both of which rely on the language of Article 36. *See id.* at 150–51; *see also Germany v. United States,* 2001 I.C.J. —— (June 27, 2001), *available at* http://www.icj-cij.org/ icjw ww/idocket/igus/igusjudgment/igus_ijudgment_toc.htm (International Court of Justice holding that "Article 36, paragraph 1 creates individual rights, which, by virtue of Article I of the Optional Protocol, may be invoked in [the International Court of Justice] by the national State of the detained person"). We also noted that a "majority of courts assume, without deciding, such a right does exist, and then hold the requested remedy is inappropriate or the defendant did not prove he was prejudiced by the alleged Article 36 violation." *Ledezma,* 626 N.W.2d at 151.

Finally, we noted that those courts that have found the existence of an individually enforceable right to notification "have often relied upon Supreme Court dicta in *Breard v. Greene* [, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998) ]." *Id.* In *Breard,* the Supreme Court commented that Article 36 *"arguably confers* on an individual the right to consular assistance following arrest." *Breard,* 523 U.S. at 376, 118 S.Ct. at 1355, 140 L.Ed.2d at 538 (emphasis added). The Court, however, dismissed the habeas corpus petition, concluding that the petitioner's Article 36 claims were procedurally barred. *Id.* at 375–77, 118 S.Ct. at 1354–55, 140 L.Ed.2d

at 537–38. The court also gratuitously pointed out that even if the petitioner's claims had been properly raised, there was no showing by the petitioner that the alleged Article 36 violation resulted in prejudice. *Id.* at 377, 118 S.Ct. at 1355, 140 L.Ed.2d at 538.

Those federal courts that have recognized the existence of an individually enforceable right have put the burden on the defendant to show actual prejudice. They have done so, concluding that the Article 36 right to notification is not a fundamental right. Prejudice is presumed when a violation of a fundamental right is involved. No such presumption arises from a violation of a right that is not fundamental. *See Murphy v. Netherland,* 116 F.3d 97, 100 (4th Cir.1997); *United States v. Ore-Irawa,* 78 F.Supp.2d 610, 613–14 (E.D.Mich.1999); *United States v. Briscoe,* 69 F.Supp.2d 738, 745–47 (D.Vi.1999); *United States v. Rodrigues,* 68 F.Supp.2d 178, 183 (E.D.N.Y.1999); *United States v. Torres–Del Muro,* 58 F.Supp.2d 931, 933–34 (C.D.Ill.1999).

■ For purposes of this case, we assume without deciding that Article 36 creates an individually enforceable right of notification. Even so, we agree with those courts that have held that to the extent Article 36 creates an individually enforceable right, such right does not rise to the level of a fundamental right. We therefore require a showing of actual prejudice before we afford any remedy for a violation of the Article 36 right.

■ **2. Prejudice.** In *United States v. Villa–Fabela,* the appellate court adopted a test for prejudice to be used when a defendant asserts a violation of INS consular notification regulations premised on Article 36. 882 F.2d 434 (9th Cir.1989), *overruled on other grounds by United States v. Proa–Tovar,* 975 F.2d 592, 594–95 (9th Cir.1992) (en banc). Several federal courts have applied *Villa–Fabela* in determining whether a defendant has been prejudiced by violation of the Article 36 right to consular notification. *See, e.g., United States v. Raven,* 103 F.Supp.2d 38, 41 (D.Mass.2000) (adopting the definition); *Briscoe,* 69 F.Supp.2d at 747 (same); *United States v. Alvarado–Torres,* 45 F.Supp.2d 986, 990 (S.D.Cal.1999) (same); *United States v. Tapia–Mendoza,* 41 F.Supp.2d, 1250, 1254 (D.Utah 1999) (same); *see also Murphy,* 116 F.3d at 100–01 (same); *United States v. Chaparro–Alcantara,* 37 F.Supp.2d 1122, 1126 (C.D.Ill.1999) (same). Under *Villa–Fabela,* the defendant has the burden of establishing that "(1) he did not know of his right; (2) he would have availed himself of the right had he known of it; and (3) 'there was a likelihood that the contact [with the consulate] would have resulted in assistance to him. . . .' " *Villa–Fabela,* 882 F.2d at 440 (quoting *United States v. Rangel–Gonzales,* 617 F.2d 529, 530 (9th Cir. 1980)). We adopt this test, but further recognize that "it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction *without some showing that the violation had an effect on the trial.*" *Breard,* 523 U.S. at 377, 118 S.Ct. at 1355, 140 L.Ed.2d at 538 (emphasis added). Lopez asserts he has satisfied the prejudice test.

■ We assume without deciding that the arresting officers knew that Lopez was a Mexican national yet failed to advise Lopez of his right to contact the Mexican consulate. For reasons that follow, however, we conclude Lopez has failed to show he suffered prejudice because of this failure.

Lopez testified at the hearing on his posttrial motions. From this testimony, we learn that Lopez knew by the time of

his trial that he had a right to contact the Mexican consulate:

> Q. Prior to the trial that we had in this matter on December 20, did you know that you had a right to contact the Mexican consulate? A. I wasn't sure, but I was trying. I was trying to find some sort of help.
>
> Q. But did you know that you had a right to contact them? A. Yes.
>
> Q. When did you know that? A. I'm not sure, but I think that every illegal Mexican in this part of the United States has that right.
>
> Q. What I'm asking you is when did you know that you had a legal right to contact the Mexican consulate? A. Around the time of my trial, the date of my trial.

Although Lopez knew he had the right to contact the Mexican consulate at around the time of his trial, he waited until after he was convicted to advise his lawyer to contact the Mexican consulate. Such conduct belies any claim that he would have sought such assistance had he known of such right.

Lopez contends that a consular official would have arranged for alternate legal counsel that would have been better able to communicate with Lopez. Lopez also asserts that alternate counsel selected by the consulate would have properly obtained separate trials for the robbery and drug tax stamp charges. Finally, he asserts that, had he been able to contact the consulate, he would have accepted a plea agreement offered by the State.

The problem with these claims is that they are all speculative. As the district court noted, Lopez points to no evidence in the record to support these claims either by way of affidavit of the Mexican consulate or by his own testimony. *Cf. Breard,* 523 U.S. at 376, 118 S.Ct. at 1355, 140

L.Ed.2d at 538 (noting that the defendant could not "establish how the Consul would have advised him, how that advice of his attorneys differed from the advice the Consul could have provided, and what factors he considered in electing to reject the plea bargain that the State offered him"). We conclude that Lopez did not show that contacting the Mexican consulate would have resulted in assistance to him as he now contends. Our conclusion does not require us to determine whether the violation had an effect on the trial.

The district court did not err in denying Lopez's motion for new trial.

## V. Ineffective Assistance of Counsel.

■ Lopez also raises various claims of ineffective assistance of counsel. In support of his claims, Lopez argues that his defense counsel was ineffective in failing to (1) notify the Mexican consulate of the criminal charges in a timely manner, (2) move for a severance of counts, (3) effectively inform Lopez of the particulars of the plea agreement, (4) take the charges to separate jury trials, and (5) focus the court's attention on the inconsistencies surrounding the presence of a weapon. The State contends that the record is not sufficient to resolve these claims because Lopez's attorney has not had an opportunity to respond.

■ We prefer to leave ineffective-assistance-of-counsel claims for postconviction relief proceedings. *State v. Ceron,* 573 N.W.2d 587, 590 (Iowa 1997). Normally, such claims will be considered on direct review only when the record is clear and trial counsel's actions cannot be explained by plausible strategic or tactical considerations. *Id.* We agree with the state's contention and preserve Lopez's claims for a postconviction relief action, with one exception. *See Atley,* 564 N.W.2d at 833 (reserving ineffective-assistance-of-

counsel claims for postconviction proceedings when record was insufficient to resolve claims on direct appeal); *State v. Coil,* 264 N.W.2d 293, 296 (Iowa 1978) (same). That exception relates to counsel's alleged failure to notify the Mexican consulate of the criminal charges in a timely manner. We have already determined that Lopez has failed to establish any prejudice because of his failure to talk with the consulate.

## VI. Sufficiency of the Evidence.

The district court found that Lopez was guilty of first-degree robbery. One of the elements the State had to prove was that Lopez aided and abetted Burton, who at the time was armed with a dangerous weapon. Lopez points out that the testimony of York, the victim, and Schwiesow, the eyewitness, was inconsistent regarding how or whether a weapon was displayed by Burton and whether the weapon was a revolver or a semiautomatic pistol. Lopez contends that this testimony is so impossible, absurd, and self-contradictory that we should disregard it entirely. He concludes that without this testimony there is no other evidence of a robbery or at the very least no evidence of first-degree robbery because there was no proof on the weapon element.

In *State v. Smith,* a case Lopez cites in support of his contention, the court of appeals rejected the testimony of three young victims as to their accounts of an alleged sexual abuse. 508 N.W.2d 101, 103 (Iowa Ct.App.1993). The court noted that, "[w]hen read separately or together, the accounts of alleged abuse are inconsistent, self-contradictory, lacking in experiential detail, and at times, border on the absurd." *Id.*

In *Smith,* the court recognized the rule that the jury is to reconcile the conflicting testimony of a witness and that generally there is no limitation on this jury function. *Id.* at 102–03. The one exception, the court noted, is that " '[t]he testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court.' " *Id.* (quoting *Graham v. Chicago & N.W. Ry.,* 143 Iowa 604, 615, 119 N.W. 708, 711 (1909)); *see also State v. Mitchell,* 568 N.W.2d 493, 503 (Iowa 1997).

■■■ Here, York told officer Glover just a few hours after the alleged crime that Burton "removed the gun from his waistband, racked a round into the chamber ... and pointed it at him and said 'I'm not kidding' or something like that." At trial, York testified Burton only displayed the butt of the gun in his waistband. He said he did "not believe" he told officer Glover that Burton took the gun out and pointed it at him.

Schwiesow told detective Thomas that Burton pulled out the weapon and pointed it. At trial, Schwiesow testified Burton just lifted up his shirt and displayed only the gun's handle. He also testified he told the detective the weapon was black, while the detective's report was that Schwiesow told the detective the weapon was a silver automatic.

These inconsistencies do not brand the challenged testimony of the victim and eyewitness as being so impossible and absurd that we should disregard it. Moreover, Lopez ignores the testimony of his companion, Gary Morehouse, who corroborates the victim's and eyewitness's testimony. Morehouse testified that he was in the car that brought Lopez, Burton, and him to the scene of the alleged crime. He also testified that Burton had a gun when Burton got out of the car and that Burton said he was going to rob York.

Here, the issue of credibility of the witnesses was for the court to decide because

it was the fact finder. The court made a specific finding on credibility:

> The Court finds that Ryan York is more credible than the defendant in the testimony presented to the Court. [Lopez testified he was in the apartment when the alleged robbery occurred.] Independent witnesses support the basic elements of Ryan York's testimony. Specifically, the Court believes the testimony of Shane Schwiesow regarding the vocal demands of the defendant and the display of a dangerous weapon on the person of Danny Burton which backed up and enforced the demand for Ryan York's jewelry.

The court as fact finder could believe some of the testimony, all of the testimony, or none of it. *See State v. Liggins,* 557 N.W.2d 263, 269 (Iowa 1996) ("A jury is free to believe or disbelieve any testimony as it chooses and give as much weight to the evidence as, in its judgment, such evidence should receive."). The court as fact finder chose to ignore the inconsistencies that Lopez complains of and chose to believe those elements of the witness's testimony that supported the first-degree robbery charge. We find no fault with the court's ultimate determination that there was sufficient evidence to find Lopez guilty of first-degree robbery.

### VII. Disposition.

In sum, we conclude the district court did not abuse its discretion in denying Lopez's request for substitute counsel and did not err in denying Lopez's motion for new trial. Additionally, there was sufficient evidence for the district court to convict Lopez of first-degree robbery. We preserve for postconviction relief Lopez's

claims of ineffective assistance of counsel. Accordingly, we affirm.

**AFFIRMED.**

SNELL, S.J.,* participates in lieu of STREIT, J., who takes no part.

---

* Senior Judge assigned by order pursuant to Iowa Code section 602 .9206 (2001).