# IN THE COURT OF APPEALS OF IOWA

No. 15-1951
Filed February 8, 2017

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WESLEY ADAM WESTMORELAND,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Daniel P. Wilson, Judge.


Wesley Westmoreland appeals from his convictions, following a jury trial, for two counts of second-degree sexual abuse and four counts of third-degree sexual abuse. **AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Mary K. Conroy, Assistant State Appellate Defender for appellant.


Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee State.


Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

Wesley Westmoreland appeals from his convictions, following a jury trial, for two counts of second-degree sexual abuse, class "B" felonies, in violation of Iowa Code sections 709.1 and 709.3(2) (2013); two counts of third-degree sexual abuse, class "C" felonies, in violation of sections 709.1 and 709.4(2)(b); and two counts of third-degree sexual abuse, class "C" felonies, in violation of sections 709.1 and 709.4(2)(c)(4). Westmoreland contends the verdicts were contrary to the weight of the evidence and the district court improperly permitted admission of expert testimony at trial. Because we find the district court did not abuse its discretion in its resolution of both issues, we affirm.

**I. Background Facts & Proceedings.**

The charges and convictions in this matter stem from the allegation that Westmoreland sexually abused a minor, A.C., over a period of approximately five years. Westmoreland lived with A.C.'s family over the five-year period. A.C. testified the abuse began when A.C. was about ten years old. A.C. stated initially Westmoreland would come into the living room where A.C. and three of his siblings were sleeping and touch A.C.'s genitals. A.C. testified this happened every night to every other night. A.C. also testified Westmoreland would "help" A.C. in the shower and would wash A.C.'s genitals, apply scar cream to A.C.'s body, and perform "rectal exams" on A.C. A.C. testified further that when the family moved to another residence, the sexual abuse continued and progressed to Westmoreland performing oral sex on A.C.

A.C.'s sibling, D.C., testified he witnessed Westmoreland sexually abusing A.C. on two occasions. A.C.'s mother also testified that on one occasion she

awoke during the night to use the bathroom and saw Westmoreland kneeling beside A.C. on the floor where A.C. slept.

The allegations of sexual abuse came to light in October 2013 when A.C. was fifteen years old. At that time, A.C. and D.C. began having behavioral issues. D.C. admitted he had become aware A.C. was being sexually abused by Westmoreland. The mother immediately required Westmoreland to move out of the family home, but did not initially report the sexual abuse because she wanted to spare A.C. the embarrassment of a trial. However, in December 2013, D.C. reported having homicidal feelings toward Westmoreland, and the mother decided police involvement was necessary. As part of the investigation, A.C. and D.C. were interviewed by Child Protection Center (CPC) forensic interviewer Kerstin Marnin.

On April 2, 2014, Westmoreland was charged with two counts of second-degree sexual assault and four counts of third-degree sexual assault. Jury trial commenced on September 1, 2014, and on September 4, 2014, the jury returned a guilty verdict on all six counts. Westmoreland now appeals.

**II. Verdict Contrary to the Weight of the Evidence.**

Westmoreland first asserts the trial court erred in denying the motion for new trial because the jury verdicts were contrary to the weight of the evidence.

We review the district court's refusal to grant a new trial on a weight-of-the-evidence claim for an abuse of discretion. *State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). We do not review the underlying question of whether the verdict is against the weight of the evidence. *Id.* A verdict is contrary to the weight of the evidence where "a greater amount of credible evidence supports

one side of an issue or cause than the other." *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998) (quoting *Tibbs v. Florida*, 457 U.S. 31, 38 (1982)).

> [T]he district court has considerable discretion when determining a motion for new trial under the weight-of-the-evidence test. Except in the extraordinary case where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial. A trial court should not disturb the jury's findings where the evidence they considered is nearly balanced or is such that different minds could fairly arrive at different conclusions.

*State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).

Westmoreland contends a new trial should be granted because A.C. and D.C.'s testimony was not credible and weighs against the verdict.

"A jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive." *State v. Liggins*, 557 N.W.2d 263, 269 (Iowa 1996). "The one exception, . . . is that 'the testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court.'" *State v. Lopez*, 633 N.W.2d 774, 785 (Iowa 2001) (citations omitted).

First, Westmoreland contends the assaults could not have happened as A.C. stated. A.C. slept near three other children in the first home and almost always slept in the same room as D.C. in the second home, making it extremely risky for Westmoreland to sexually abuse A.C. without getting caught. Further, Westmoreland contends the homes were old and had creaky floors, making it impossible for him to move around the home at night unnoticed. Second, Westmoreland asserts inconsistencies between A.C. and D.C.'s trial testimony and statements in prior interviews reflects their weak credibility.

In its ruling on the motion for new trial and motion in arrest of judgment, the district court held:

> Despite th[e] inconsistencies, the court finds the State's witnesses credible with respect to the operative facts of the sexual abuse. A.C. testified to multiple incidents of [Westmoreland] performing sex acts on him; masturbation and oral sex, D.C. testified that he observed [Westmoreland] performing those sex acts on A.C., consistent with A.C.'s testimony. [The mother] also testified to catching [Westmoreland] kneeling next to A.C. on an occasion when she got out of bed during the night, consistent with A.C. and D.C.'s testimony regarding the incidents of sexual abuse. . . .
>       The Court also finds that [Westmoreland]'s testimony partially corroborates the testimony of the witnesses. Specifically, he admitted that he helped the children with their showers, handing them soap and shampoo; he admitted to applying scar cream to the children, including to their buttocks; and he admitted to being in the living room where A.C. and D.C. slept at night and covering them up with blankets until age [fifteen]. . . . [T]he court finds that the corroboration of these non-criminal facts can be used in assessing the credibility of witnesses.

As to the size of the homes and the creaky floors, the district court held:

> While these facts certainly establish that it would have been risky for [Westmoreland] to engage in sexual abuse of A.C., the evidence also shows that the floors (and stairs from the basement) were squeaky or creaky, which could warn [Westmoreland] that someone else was awake and moving about the house. Accordingly, the court will not deem the testimony of A.C. and D.C. a nullity, and credibility of the witnesses should be left to the jury.

We agree with the district court that A.C. and D.C.'s testimony was not so impossible, absurd, or self-contradictory to be deemed a nullity by the court. "Our system of justice vests the jury with the function of evaluating a witness's credibility." *State v. Dudley*, 856 N.W.2d 668, 676 (Iowa 2014). The jury in this matter considered A.C. and D.C.'s testimony and determined it to be credible. In evaluating the testimony provided at trial and the other evidence presented, the district court held, "Even though different minds could and fairly may arrive at

different conclusions, . . . [t]he jury was free to reach its conclusions and verdict, and the verdict reached was within the range of evidence admitted and considered by the jury." We agree with the conclusions reached by the district court. This is not the extraordinary case where the evidence preponderates heavily against the verdicts. The district court did not abuse its discretion in determining the jury verdicts were not contrary to the weight of the evidence.

**III. Expert Testimony.**

Westmoreland also contends the district court erred in allowing admission of expert-witness testimony by the forensic interviewer, Marnin. Westmoreland argues the testimony improperly vouched for the credibility of A.C.

We review the district court's admission of the objected to testimony for an abuse of discretion. *See State v. Brown*, 856 N.W.2d 685, 688 (Iowa 2014). "The district court abuses its discretion when it exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

"[E]xpert testimony is not admissible merely to bolster credibility." *Dudley*, 856 N.W.2d at 676.

> We allow an expert witness to testify generally that victims of child abuse display certain demeanors. However, when an expert witness testifies a child's demeanor or symptoms are consistent with child abuse, the expert crosses that very thin line and indirectly vouches for the victim's credibility, thereby commenting on the defendant's guilt or innocence.

*State v. Jaquez*, 856 N.W.2d 663, 666 (Iowa 2014). An expert may not directly or indirectly vouch for the credibility of a witness. *Dudley*, 856 N.W.2d at 676.

Westmoreland objects to the following testimony by Marnin on the State's redirect examination:

> Q. Miss Marnin, earlier [defense counsel] asked you a question regarding your—the types of questions and the manner in which you ask questions. Is it correct that you said you ask the questions that are designed to be open-ended and non-leading; is that correct? A. Correct.
> Q. And I believe the issue that Mr. Cook was alluding to, he asked whether your questions are designed to encourage children to give—basically to give all of the information they're aware of.
> In your practice and your experience, do you expect a child in one single interview to provide you with every detail, all of the information about what's happened to them? A. In my experience, most children do not.
> Q. How do you generally expect that process of disclosure of information to occur? A. Through my—
> [objection by defense counsel]
> . . . .
> A. Thank you.
> So through my experience and also research, it supports that children disclose in a process. Oftentimes they do what we call "testing the waters." They'll give a little bit of information to see how that information is taken, how people react to it, what happens after they give a little bit of information, and they may disclose more information after time depending on how that information is taken.

Westmoreland contends this testimony improperly vouched for A.C.'s testimony by providing an explanation for the inconsistencies in A.C.'s testimony at trial and A.C.'s previous statements in interviews and depositions.

We disagree. In this testimony, Marnin testified to her general practices when interviewing child victims and the process by which children delay in reporting information about their abuse. Marnin's testimony did not attempt to improperly link A.C.'s behavior to behaviors observed in known sex abuse victims. *See State v. Pitsenbarger*, No. 14-0060, 2015 WL 1815989, at *8 (Iowa Ct. App. Apr. 22, 2015) ("[T]he supreme court's ruling in *Dudley* clearly reflects expert testimony that indirectly or implicitly attempts to match up behaviors that

are observed in known sex abuse victims with the complainant's behaviors constitutes vouch for the complainant's credibility.").

Additionally, in previous cases "testimony has been allowed that explains why child victims may delay in reporting their sexual abuse." *State v. Maxwell*, No. 15-1392, 2016 WL 6652361, at *7 (Iowa Ct. App. Nov. 9, 2016) (citing *State v. Payton*, 481 N.W.2d 325, 327 (Iowa 1992)); *see also State v. Lusk*, No. 15-1294, 2016 WL 4384672, at *3 (Iowa Ct. App. Aug. 17, 2016) (holding a district court did not abuse its discretion in allowing expert testimony regarding whether child victims of sexual abuse sometimes delay reporting and whether sexual abuse of a child could occur when other people were in the room). Marnin's testimony related to whether child victims of sexual abuse sometimes delay in reporting and may not provide all the details in the first disclosure of the abuse does not cross the thin line to constitute vouching for the credibility of A.C. Marnin did not provide any statistics and simply stated child victims of sexual abuse often only initially report a small amount of the information. The jury still had to decide the credibility of the children. We therefore conclude the district court did not abuse its discretion in allowing admission of the expert testimony.[1]

---

[1] We note the State properly asserted error was not preserved as to the first two questions and answers from the testimony excerpt because defense counsel did not object to these portions of the testimony. Westmoreland contends where there was a failure to object to portions of the testimony, the failure constituted ineffective assistance of trial counsel. However, because we find the testimony did not improperly vouch for A.C.'s credibility, any claims raised by Westmoreland as to ineffective assistance of counsel lack merit.

**IV. Conclusion.**

We find the district court did not abuse its discretion in determining the verdict was not contrary to the weight of the evidence and in permitting admission of the expert testimony. We therefore affirm.

**AFFIRMED.**