# IN THE COURT OF APPEALS OF IOWA

No. 18-2129
Filed August 5, 2020

**NAPOLEON MBONYUNKIZA,**
     Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Polk County, Michael D. Huppert,

Judge.


     The applicant appeals the denial of his postconviction-relief application.

**AFFIRMED.**



     Agnes G. Warutere of Warutere Law Firm, P.L.L.C., Ankeny, for appellant.

     Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney

General, for appellee State.


     Considered by Vaitheswaran, P.J., Doyle, J., and Potterfield, S.J.*

     *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2020).

**POTTERFIELD, Senior Judge.**

In 2010, Napoleon Mbonyunkiza was charged with sexual abuse in the third degree, neglect of a dependent person, and dependent adult abuse. He was arrested but then released from custody on bond. Before the date of his scheduled preliminary hearing, Mbonyunkiza fled to Uganda. The State later filed a trial information charging him with the additional crime of failure to appear.

Mbonyunkiza returned to the United States in 2013, and in 2014 he pled guilty to all four charges against him. He was sentenced to a term of incarceration not to exceed thirty years. Mbonyunkiza filed a direct appeal, and we affirmed his convictions and sentences in *State v. Mbonyunkiza*, No. 14-1283, 2016 WL 7395720, at *9 (Iowa Ct. App. Dec. 21, 2016).

In his application for postconviction relief (PCR), Mbonyunkiza alleged his trial counsel provided ineffective assistance by failing to properly inform him of all the adverse immigration consequences of pleading guilty.[1] He also argued his trial counsel provided ineffective assistance by failing to properly inform him of his right to consular access prior to his guilty plea and now claims on appeal that his PCR counsel was ineffective in not presenting evidence to establish how Mbonyunkiza could have benefitted from such access to the Rwandan consulate.

"Generally, an appeal from a denial of an application for [PCR] is reviewed for correction of errors at law." *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018). However, "[w]hen the applicant's claims are of a constitutional nature, this court engages in a de novo review." *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011).

---

[1] Mbonyunkiza also raised other claims on PCR, which the district court ruled upon and denied. He does not challenge those rulings, so we do not address them.

An applicant's right to effective assistance from counsel in PCR proceedings is statutory rather than constitutional, but we still apply a de novo review to a claim of ineffective assistance regarding PCR counsel. *Id.*; *see also Goode*, 920 N.W.2d at 523–24.

**Immigration Consequences.** Mbonyunkiza maintains his trial counsel provided ineffective assistance by failing to advise him of all of the immigration consequences associated with his guilty pleas. To establish ineffective assistance of counsel, Mbonyunkiza has the burden to show "(1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom." *Ledezma v. State*, 626 N.W.2d 134, 141–42 (Iowa 2001). Counsel has a duty "to inform his or her client of all the adverse immigration consequences that competent counsel would uncover." *Diaz v. State*, 896 N.W.2d 723, 732 (Iowa 2017). This includes "potential adverse consequences from the criminal proceedings, including removal, exclusion, bars to relief from removal, immigration detention, denial of citizenship, and adverse consequences to the client's immediate family." *Id.* In the context of a guilty plea, to establish the "prejudice" requirement, Mbonyunkiza "must show that there is a reasonable probability that, but for counsel's errors, he would not have [pled] guilty and would have insisted on going to trial." *State v. Straw*, 709 N.W.2d 128, 136 (Iowa 2006).

Mbonyunkiza is from Rwanda and was living in the United States on refugee status in 2010. When he fled to Uganda after being criminally charged, he did so without the permission of the United States government. According to the prosecutor's statements during the plea hearing, Mbonyunkiza was only allowed to return to the United States in 2013 on "immigration parole," which meant he was

only allowed to return to the United States for the purpose of resolving his criminal case and that after his criminal case was concluded—even if he was acquitted of all four charges—he would be removed from the country. At the plea hearing, Mbonyunkiza asked if he would be sent to Rwanda upon the completion of his case; he expressed concern that he would lose his United Nations refugee status if he returned to his country of origin instead of being sent elsewhere. From the transcript of the plea proceedings, it seems neither his trial attorney nor the prosecutor were able to answer his question. The court gave Mbonyunkiza the option to proceed to trial rather than enter guilty pleas, but Mbonyunkiza proceeded to plead guilty.

At the PCR hearing, Mbonyunkiza testified he was unaware deportation was a possibility in this case and would not have pled guilty if he knew it was. But this testimony is belied by the record of the plea and sentencing proceedings. While it was not his counsel who advised Mbonyunkiza regarding deportation, he was told in no uncertain terms that he would be deported at the conclusion of his case and the fact that he was going to be deported did not hinge on the outcome of his case. At sentencing, Mbonyunkiza's attorney asked the court to impose a more lenient sentence, noting Mbonyunkiza would "never be released back into the community in any part of the United States" as he would "finish his sentence and punishment in the state prison and be returned to Africa." Mbonyunkiza exhibited this same understanding, as after the court announced it was imposing consecutive sentences of imprisonment, he asked, "Even though I'm going to go to Africa?"

Insofar as Mbonyunkiza is challenging his trial counsel's failure to advise him where he will eventually be sent once he discharges his thirty-year sentence,

there is nothing in the record before us that suggests an answer to that question exists at this time. And we have no indication that his convictions affect that answer. *See Diaz*, 896 N.W.2d at 732 (finding counsel's performance deficient when counsel "did not inform [the defendant] of the direct, severe, and certain immigration consequences of pleading guilty"). Mbonyunkiza has not proved that additional information regarding the consequences of his guilty pleas would have stopped him from pleading guilty. This claim of ineffective assistance fails.

**Consular Access.** Next, Mbonyunkiza maintains his trial counsel provided ineffective assistance in failing to advise him he had the right to consular access and that PCR counsel was ineffective in failing to present evidence at the PCR hearing to establish how Mbonyunkiza could have benefitted from such access. *See Ledezma*, 626 N.W.2d at 152 ("We believe all criminal defense attorneys representing foreign nationals should be aware of the right to consular access as provided by Article 36 [of the Vienna Convention on Consular Relations], and should advise their clients of this right); *see also State v. Lopez*, 633 N.W.2d 774, 783 (Iowa 2001) (assuming without deciding there is an individually enforceable right of notification and requiring a showing of actual prejudice before affording a remedy).

Assuming counsel had a duty to advise Mbonyunkiza of his right to access the Rwanda consulate and failed to do so, Mbonyunkiza must still establish prejudice. In *Lopez*, the defendant, who was a Mexican national, filed a motion in arrest of judgment arguing his rights had been violated when the police did not provide him an opportunity to contact the Mexican consulate. 633 N.W.2d at 778. The district court denied his motion, and Lopez filed a direct appeal of that denial.

*Id.* On direct appeal and with error preserved, our supreme court determined that to establish prejudice, "the defendant has the burden of establishing that '(1) he did not know of his right; (2) he would have availed himself of the right had he known it; and (3) "there is a likelihood that the contact [with the consulate] would have resulted in assistance to him."'" *Id.* at 783 (citations omitted). Mbonyunkiza must establish at least this in order to establish *Strickland* prejudice, as is required to succeed on his claim of ineffective assistance. But Mbonyunkiza has not shown how the Rwanda consulate would have assisted him. *See Garcia v. State*, No. 05-1013, 2009 WL 1066520, at *8 (Iowa Ct. App. Apr. 22, 2009) (finding the applicant failed to prove prejudice regarding his consular-access claim, where the applicant presented deposition testimony from an official from the Mexican Consulate but that deposition did not support the applicant's claims of what the consulate would have done for him that would have prevented him from pleading guilty); *see also Ortiz v. State*, No. 13-1290, 2015 WL 3613262, at *3 (Iowa Ct. App. June 10, 2015) (concluding applicant failed to prove prejudice on his consular-access claim when he "did not offer any evidence as to what advice or information the Consulate could have provided him in advance of his guilty plea that would have caused him to insist on proceeding to trial rather than pleading guilty"). And his claim that PCR counsel was ineffective for failing to introduce such evidence does not correct the issue. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) ("When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job."). This claim of ineffective assistance fails.

Because Mbonyunkiza has not proved his claims of ineffective assistance by his trial and PCR counsel, we affirm.

**AFFIRMED.**