# IN THE COURT OF APPEALS OF IOWA

———————

No. 24-1950
Filed April 1, 2026

———————

**Rodolfo Gonzalez Pena,**
Applicant–Appellant,

v.

**State of Iowa,**
Respondent–Appellee.

———————

Appeal from the Iowa District Court for Black Hawk County,
The Honorable Joel Dalrymple, Judge.

———————

**AFFIRMED**

———————

Jamie Hunter of Dickey, Campbell & Sahag Law Firm, PLC, Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant
Attorney General, attorneys for appellee.

———————

Considered without oral argument
by Greer, P.J., and Schumacher and Ahlers, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

Rodolfo Gonzalez Pena (Gonzalez)[1] appeals from the district court order denying his application for postconviction relief (PCR). His sole claim on appeal is that his trial counsel was ineffective for failing to advise him of his rights under Article 36 of the Vienna Convention to assistance of the Mexican Consulate based upon his contention that he could not understand or communicate in English. Gonzalez failed to prove he was prejudiced without assistance from the consulate. Upon our review, we affirm.

## I. Background Facts and Proceedings.

While at a bar in August 2014, Gonzalez left the bar, followed by another patron. Once in the parking lot, the patron was shot in the chest and then in the head at close range, first without killing him but the second shot had fatal results. Gonzalez testified that the patron threatened him with a knife and said that "he wanted to kill [him]." Shortly after the shooting, Gonzalez was driving with no headlights and law enforcement pulled him over. During the stop, the officer discovered a pistol between the driver's and passenger's seats. Gonzalez was arrested for driving with a suspended license and carrying weapons.

Several individuals who had been present at the bar that evening arrived at the police station and identified Gonzalez as being involved in the shooting. Testing revealed that the gun in Gonzalez's vehicle was used in the shooting and he was subsequently charged with murder in the first degree.

---

[1] While the district court referred to the applicant as "Gonzalez Pena," we use "Gonzalez" in this appeal, just as we did in his direct appeal to our court. *See State v. Pena*, No. 16-1067, 2017 WL 5185425, at *1 (Iowa Ct. App. Nov. 8, 2017).

In May 2015, a jury convicted him of one count of murder in the first degree and one count of carrying weapons.

Gonzalez moved several times for a new trial. In his third motion, he claimed he was entitled to a new trial because he was not provided a Spanish interpreter during trial, nor did the trial court have a colloquy with him about whether he required an interpreter, and his attorney was ineffective in part for failing to provide an interpreter. A hearing was held on that motion, and Gonzalez claimed he did not understand fifty percent of what occurred at trial. Gonzalez's trial attorney testified that Gonzalez did not express difficulties in communicating in English and, when Gonzalez was asked, he said that he did not require an interpreter. His trial attorney further explained that his communications with Gonzalez about the case influenced the defense strategy at trial.[2]

Ultimately the trial court determined that Gonzalez could understand English. The trial court pointed to several indicators of this, including: video evidence of his initial stop with the police where he communicated with the officer in English, his interview at the police department, a letter he wrote in English, his English testimony at trial, that Gonzalez ran a business that was carried out in English, and phone conversations he conducted in English. Additionally, when he was asked by his trial counsel and the State's trial counsel if he could communicate in English, he answered that he could and an interpreter was not necessary. The trial court noted:

> [Gonzalez's] attorney at trial . . . credibly testified he was aware English was a second language to [Gonzalez], but [Gonzalez] did not have trouble communicating with him about the case, nor was there an indication he did not understand the legal aspects of the case. [His trial attorney] also

---

[2] Gonzalez's trial attorney served as a chief public defender and had worked in the field for over ten years at the time of the trial.

credibly testified that when discussing whether or not an interpreter would be necessary, [Gonzalez] indicated he did not need an interpreter and at no point, at or before trial, did [Gonzalez] indicate to [his trial attorney] he desired an interpreter to assist him. Finally, [his trial attorney] testified he believed the jury would be able to fully understand [Gonzalez] when he testified at trial, and a review of [Gonzalez's] testimony suggests that, despite moments when [Gonzalez] would speak quickly, the jury would likely have been able to fully understand the testimony of [Gonzalez]. Given the facts presented, the Court finds [Gonzalez] had "sufficient English communication skills to proceed at trial without the assistance of an interpreter." [*State v. Afo-Odjebiti*, No. 05-1128, 2006 WL 3436473, at *1 (Iowa Ct. App. Nov. 30, 2006)].

The trial court sentenced him to life in prison. A panel of this court affirmed his convictions on direct appeal. *Pena*, 2017 WL 5185425, at *1.[3]

In 2018, Gonzalez applied for PCR as a pro se party, raising issues of ineffective assistance of counsel. After counsel was appointed for Gonzalez, his petition was amended. A PCR trial was held in September 2024, and Gonzalez testified, through an interpreter, that he had trouble communicating with his attorney and understanding law enforcement due to his limited English proficiency. After reviewing the transcripts from trial and the post-trial motions hearing, the PCR court found Gonzalez's trial counsel credible and Gonzalez not credible, and the court labeled his PCR testimony as "suspect." After the PCR trial, Gonzalez's PCR application was denied. He appeals.

---

[3] On direct appeal he argued: (1) the facts did not support a conviction of felony murder, (2) the trial "court erred in summarily denying his motion for new trial and instructing the jury on felony murder," and (3) ineffective assistance by trial counsel in not asking for the jury to determine whether there were independent criminal acts. *Id*.

4

## II. Standard of Review and Error Preservation.

We usually review appeals of PCR applications for correction of errors at law. *Goode v. State*, 920 N.W.2d 520, 523 (Iowa 2018). But when the review implicates a constitutional issue, such as ineffective assistance of counsel, our review is de novo. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). Likewise, when "we are called upon to interpret the Vienna Convention, we review the trial court's ruling de novo." *State v. Buenaventura*, 660 N.W.2d 38, 44 (Iowa 2003).

To preserve issues on appeal they must be raised before and decided by the district court. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). The State argues that Gonzalez did not preserve and thus waived several of his claims of prejudice on appeal. Specifically, the State asserts that Gonzalez failed to raise his post-PCR-trial arguments that if he had been aware of his right under Article 36 he "may have asserted a general denial," "may not have testified in his defense," and that he would have "understood his constitutional rights." Gonzalez argues that these are not new claims of prejudice on appeal and his "brief explained different ways in which a defendant could benefit from consular access and how that could have impacted trial."

The PCR court considered his claim that "trial counsel was constitutionally ineffective for failing to inform [Gonzalez] of his rights under the Vienna Convention and for notification and assistance of the Mexican Consulate." The court concluded that Gonzalez failed to show that but for his counsel's error "the results of the proceedings would have been different." Because the court's analysis includes that Gonzalez failed to prove how consular access would have affected the outcome of the trial, "we

cannot say that the court failed to consider and rule upon the matter." *See id.* at 865 (finding error was preserved). We find these claims were preserved.

Additionally, the State argues Gonzalez's claim that he required an interpreter was previously adjudicated. Here, Gonzalez presents his need for an interpreter under his ineffective assistance of counsel claim for how he would have received assistance from accessing the Mexican Consulate under Article 36. We conclude that this was framed differently than his previous assistance of an interpreter claim and to the extent Gonzalez presents the violation of Article 36 to include his alleged need for an interpreter, we consider it. We turn to the merits of Gonzalez's ineffective-assistance-of-counsel claim.

### III. Analysis.

On appeal, Gonzalez solely hinges his ineffective-assistance-of-counsel claim on his trial counsel's failure to advise him of his rights under Article 36 of the Vienna Convention for notification and assistance of the Mexican Consulate.[4] He claims that he "was never advised of his right to

---

[4] In pertinent part Article 36 states:

> 1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State:
>
> . . . .
>
> (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.

notification of the Mexican consulate, which could have greatly assisted him in navigating a foreign legal system—especially with the assistance of an interpreter."

To establish ineffective assistance of counsel, an applicant must show both that "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012). If an applicant fails "to establish either of these elements, we need not address the remaining element." *Nguyen v. State*, 878 N.W.2d 744, 754 (Iowa 2016) (citation omitted). Gonzalez asserts our case law mandates that Gonzalez had to be "apprised of Article 36." As it currently stands, our supreme court has not decided whether Article 36 of the Vienna Convention on Consular Relations creates an individual enforceable right to the notification of consular access. *See Ledezma v. State*, 626 N.W.2d 134, 150–52 (Iowa 2001); *see Garcia v. State*, No. 05-1013, 2009 WL 1066520, at *8 (Iowa Ct. App. Apr. 22, 2009) ("Our supreme court stated that counsel representing a foreign national should advise his or her client of the right to consular access under the Vienna Convention on Consular Relations. However, the court has declined to say whether Article 36 of the Vienna Convention creates an individually enforceable right to consular notification."); *see also Mbonyunkiza v. State*, No. 18-2129, 2020 WL 4497395, at *2 (Iowa Ct. App. Aug. 5, 2020) (assuming the counselor had a duty to inform the defendant of his right under Article 36 but finding the applicant failed to prove prejudice on his claim when he did "not show[] how the Rwanda[n] consulate would have assisted him.). But, assuming without deciding that there is an enforceable right to notification, the individual claiming the right must show actual prejudice

Vienna Convention on Consular Relations, Apr. 24, 1963, art. 36, 21 U.S.T. 77, 101.

before a remedy will be afforded. *State v. Lopez*, 633 N.W.2d 774, 783 (Iowa 2001).

To show prejudice from his trial counsel's failure to advise him of his rights under Article 36, Gonzalez has the burden to establish "(1) he did not know of his right; (2) he would have availed himself of the right had he known of it; and (3) there was a likelihood that the contact with the consulate would have resulted in assistance to him." *Id.* (cleaned up); *see also id.* ("We adopt this test, but further recognize that 'it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction *without some showing that the violation had an effect on the trial*.'" (citation omitted) (emphasis in original)).

On this record, Gonzalez failed to prove prejudice on the third prong. He argues the lack of notice of his rights under Article 36 prejudiced his understanding of the American criminal justice system and his decision making. He claims that if he was made aware of this right, he would have contacted the Mexican Consulate and been appointed an interpreter.[5] Iowa law allows for the assistance of an interpreter if certain conditions are met. Iowa Code section 622A.2 provides: "Every person who cannot speak or understand the English language and who is a party to any legal proceeding or a witness therein, shall be entitled to an interpreter to assist such person throughout the proceeding." Iowa Code § 622A.2 (2018). Here, Gonzalez could not establish either that he could not understand English or that he was unable to speak English.

---

[5] The PCR court found it "interesting" that Gonzalez was adamant his trial counsel did not advise him of this right but earlier, when asked if he had been advised of his right to contact the consulate at the post-trial motion hearing answered, "Not that I remember."

In *Afo-Odjebiti*, the district court found a defendant did not require an interpreter to have a fair trial even though he spoke with "a thick accent that ma[de] it difficult to understand his speech." 2006 WL 3436473, at *1. There the defendant filed pro se documents, communicated with bank employees in English, communicated appropriately in response to police questions, had relationships with others communicating in English, and the video of the law enforcement investigation revealed he "was able to speak and understand English." *Id.* at *2. The record reveals that, like Afo-Odjebiti, Gonzalez was not prejudiced by not having an interpreter.

At the underlying trial, Gonzalez testified without difficulty on his behalf and was cross-examined by the State. Both his trial counsel and the State asked him if he understood English or required an interpreter, he responded that he understood and did not require an interpreter. During trial he spoke with an accent and a few times the court reporter had to ask for clarifications, but overall his testimony, where he was asked and answered questions in English, totaled over sixty pages of the transcript. On our review, the recording of his testimony shows that the jury would have been able to understand him even with his accent. In the hearing on post-trial motions, his trial attorney testified that he was able to successfully communicate with Gonzalez in English and at no point did Gonzalez indicate he needed an interpreter. *See Vega-Sanchez v. State*, No. 12-0642, 2013 WL 2146544, at *2 (Iowa Ct. App. May 15, 2013) (finding no constitutional violation when a defendant was not provided an interpreter in part because his trial attorney "was convinced an interpreter was not necessary"). In addition, the trial attorney thought that the jury would have been able to understand him.

His English proficiency is showcased in other places in the record. Gonzalez was able to write short letters in English. The videos of the initial stop with law enforcement and the initial interview with law enforcement indicate that Gonzalez was able to speak and understand English. The police officer who conducted the investigation testified that Gonzalez understood "99 percent" of the interview which was on par with persons whose first language is English. The record reveals that Gonzalez was able to conduct his construction business primarily in English. There were also recorded jail phone call conversations in English, which included discussions about his case, including what his attorneys had told him.

At the PCR proceeding, Gonzalez presented no evidence of how contacting the Mexican Consulate could have assisted him. In his appellate brief, Gonzalez asserts he might have made different decisions if advised by the Mexican consulate. Still, Gonzalez failed to show at the PCR hearing how the consulate's assistance would have assisted him or changed the outcome. *See Mbonyunkiza*, 2020 WL 4497395, at *2. As for his claim that the consulate could have provided him an interpreter, it fails because the record shows that he was not prejudiced by his lack of an interpreter. *See Thongvanh v. State*, 494 N.W.2d 679, 683 (Iowa 1993) (finding counsel was not ineffective because the defendant failed to object to the translation provided by the trial court); *see also Tong v. State*, No. 12-1566, 2013 WL 4769436, at *1 (Iowa Ct. App. Sep. 5, 2013) ("Though [the defendant] may have struggled to understand some of the more legally complex portions of the proceedings, the difficulty was not a result of a language barrier. We are also persuaded by the fact [the defendant] did not request an interpreter during the plea hearing."). In *Tong*, a panel of this court found that the defendant's "skill with the English language was sufficient to allow him to adequately participate in the proceedings." 2013 WL 4769436, at *1. Here, Gonzalez

could not show that contacting the consulate would have resulted in a different outcome, namely that an interpreter would have affected the outcome of the trial.

Even if we assume that trial counsel failed to perform an essential duty, Gonzalez has failed to prove "that, but for counsel's errors, the result of the proceeding would have been different." *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). Because of Gonzalez's failure to prove prejudice, his ineffective-assistance-of-counsel claim fails. Thus, we affirm the denial of Gonzalez's PCR claim.

### IV. Conclusion.

Under the prejudice prong, Gonzalez failed to prove that his trial counsel was ineffective for failing to advise him of his rights under the Vienna Convention for notification and assistance of the Mexican Consulate. We affirm the denial of his PCR application.

**AFFIRMED.**