**STATE of Iowa, Appellant,**

v.

**Allen Raymond SMITH, Appellee.**

No. 92–1343.

Court of Appeals of Iowa.

Sept. 2, 1993.

# 102

Alfredo Parrish of Parrish & Kruidenier, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett and Virginia Barchman, Asst. Attys. Gen., and Peter C. Hart, County Atty., for appellee.

Considered by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

DONIELSON, Presiding Judge.

On December 9, 1991, the grand jury returned an indictment charging Allen Smith with multiple counts (264 total) of lascivious acts with a child, sexual abuse in the second degree, assault with intent to commit sexual abuse, and indecent contact with a child. The State alleged that Smith sexually abused his stepdaughters, fraternal twins S.A.K. and S.M.K., age eleven, and A.K., age eight. On March 6, 1992, the State amended the indictment reducing the original 264 counts to fourteen counts, seven of which the State later dismissed. Counts I through III charged Smith with sexual abuse in the second degree in violation of Iowa Code sections 709.1 and 709.3(2) (1991) against S.M.K., counts IV and V charged Smith with sexual abuse in the second degree against S.A.K. Count VI charged Smith with assault with intent to commit sexual abuse against A.K., and count VII charged Smith with indecent contact with a child in violation of Iowa Code section 709.12 against A.K. During the trial, count VI was dismissed.

A jury found Smith guilty of sexual abuse of S.A.K. and S.M.K. and a lesser-included offense of assault of S.A.K. Smith filed a motion in arrest of judgment and a motion for a new trial. The court overruled the motions. The sentencing court dismissed the lesser-included offense of assault. The court then entered judgment on the conviction and sentenced Smith to three concurrent terms not to exceed twenty-five years. Smith appeals.

Smith argues that there is insufficient evidence to support his conviction. Smith contends that direct evidence in the case is inconsistent. He points to contradictions in the testimony of the children and portions of the children's testimony where they were unable to explain or describe what happened.

Next, Smith argues that he was denied effective assistance of counsel. Smith contends that his trial counsel erred in failing to object to the testimony of a physician who specializes in child sexual abuse. Smith argues that the testimony elicited from the expert went beyond her expertise and into the psychological manifestations of sexual abuse. Smith argues that the testimony was irrelevant and highly prejudicial. He also contends that his counsel provided ineffective assistance by failing to call an expert witness to point out the flaws in the children's stories.

In addition, Smith argues that he was denied his right to a fair trial because of prosecutorial misconduct. During the prosecution's opening statement, six objections were made; five of which were sustained. Smith also points to dialogue between the prosecutor and a witness. Smith argues that he was prejudiced from the beginning of the trial and the prejudice continued throughout the proceedings. Finally, Smith argues that the cumulative effect of the trial errors was so prejudicial that he was denied a fair trial.

■ Our standard of review is well settled. A verdict will be upheld where there is substantial evidence to support the charge. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984). Substantial evidence means such evidence as could convince a rational trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* The evidence is viewed in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984). We consider all the evidence at trial, not just the evidence that supports guilt. *State v. Robinson,* 288 N.W.2d 337, 340 (Iowa 1980).

■ Normally, it is for the jury to determine the credibility of witnesses. *State v. Allen,* 348 N.W.2d 243, 247 (Iowa 1984) (citing *State v. Jones,* 271 N.W.2d 761, 763 (Iowa 1978)). We have adopted a limitation, however, on this rule. The supreme court

established this exception in *Graham v. Chicago & Northwestern Ry. Co.*, 143 Iowa 604, 119 N.W. 708 (1909) stating:

> This court has gone its full length to protect the right of jury trial against encroachment by the courts under any guise, and one of the rights of jury trial is the right to have the credibility of the witness determined by the jury. Generally speaking there are no limitations upon this rule, but there are limitations upon the application of it. The testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court.

*Id.* at 615, 119 N.W. at 711. In *Graham,* a witness testified at one trial, then gave a "different and self-contradictory" account of certain facts at a second trial.

The supreme court interpreted the *Graham* limitation in *State ex rel. Mochnick v. Andrioli*, 216 Iowa 451, 249 N.W. 379 (1933):

> The rule that it is for the jury to reconcile the conflicting testimony of a witness does not apply where the only evidence in support of a controlling fact is that of a witness who so contradicts himself as to render finding of facts thereon a mere guess. We may concede that, ordinarily, contradictory statements of a witness do not make an issue of fact; and that such situation may deprive the testimony of all probative force.

*Id.* at 453, 249 N.W. at 380. In *Andrioli,* the court found other corroborating testimony allowed the witness to correct her earlier testimony.

The supreme court addressed the *Graham* limitation again in *State v. Frank*, 298 N.W.2d 324 (Iowa 1980), but found that it did not need to determine if the limitation applied to recanted as well as self-contradictory testimony because there was circumstantial evidence linking the defendant to the scene of the crime.

■ In the present case the only evidence against appellant is the statements and testimony of the three girls. When read separately or together, the accounts of alleged abuse are inconsistent, self-contradictory,

lacking in experiential detail, and, at times, border on the absurd.

We are not alone in our concern about the evidence and the jury's verdict. The prosecutor alluded to problems with consistency and contradiction in the girls' testimony in his opening statement:

> And to see these six interviews shown to the girls, are questioned about what they said at what different time, is going to be a source of confusion, but listen closely and you can hear the girls—you can hear the truth come through those girls' statements.... [objection] When you are reviewing the testimony of the witnesses, I would like you to watch for the thread of truth running through these—[objection].

In the sentencing hearing the State asked for consecutive sentences on the three convictions. The court, in imposing concurrent sentences instead of consecutive sentences expressed its concern:

> [T]here is a very strong possibility that there may be a new trial in this case or at least there is a possibility; ... Nobody has mentioned it, but nobody is perfect, including the jury; and while the court is not taking issue with the jury's verdicts, I suppose it's possible that the jury could have been wrong....

The jury found appellant guilty of three counts of sexual abuse in the second degree concerning his twin stepdaughters, S.A.K. and S.M.K. We examine the evidence for each in turn.

The charge concerning S.A.K. relates to the family's time in Storm Lake. Before the trial she was interviewed and gave a deposition, so she had been over this testimony several times and stated she had practiced for the trial. She first testified that appellant touched her while sharing a twin bed during an ice storm. Also in this small bedroom on bunk beds just about a foot away were his wife and one stepdaughter on the bottom bunk and another stepdaughter on the top bunk—but no one saw or heard anything. She then testified that he touched her several times in the bedroom and on his lap on the living room couch. Just a few minutes later she remembers only one incident in Storm Lake. Later in the same testimony

she says it was two times in Storm Lake. Then she testified that she told a DHS interviewer that it was over five times. Later she stated that appellant had never touched her while she was on his lap. Her testimony was self-contradictory.

She was questioned at various times throughout her testimony for details, but could provide none. When asked if he removed her underwear she said, "I don't know." When asked whether he touched her on her clothes or on her skin, she said, "I don't know." When later asked whether the touch was brief or lengthy, she responded, "I don't know." When asked if the touches were the same each time or different, she said, "I don't know." All she could say definitely was that he used his finger and that it hurt. Yet there was no testimony at trial by any witness that S.A.K. ever reacted to the hurt such as saying "ouch" or "that hurts" or that she moved away from him or that anyone else observed anything even though they were in close proximity in the same room. Nor was there any physical evidence of abuse found in a careful medical examination. This testimony lacks the probative value necessary to enable a rational jury to find beyond a reasonable doubt that appellant abused S.A.K. in Storm Lake.

The jury also convicted appellant of two counts of sexual abuse of his stepdaughter, S.M.K., once in Emmetsburg and once in Storm Lake.

S.A.K. testified to seeing appellant touch S.M.K. in the living room in Storm Lake while S.M.K. was on his lap covered with an afghan. Yet S.M.K., when asked about where the touches occurred in Storm Lake, said, "just the bedroom." In interviews and depositions before trial, S.M.K. stated appellant had not touched her in Ames. When testifying at trial she first confirmed her earlier statements, then contradicted herself and said, "I'm sure that he touched me in Ames." When asked about her testimony in the videotaped deposition about the touches in Storm Lake, she replied, "I'm not sure about any of them. I think I guessed when I told her."

S.M.K.'s testimony, like S.A.K.'s, is almost completely devoid of any experiential detail. When questioned about what she was wearing, who was in the room at the time, where appellant was, or what appellant did, her responses frequently began with "probably . . ." or "might have been . . ." as if she were trying to fill in details she never experienced. When asked about her deposition statement that appellant had licked her while holding her over his head, she changed her story and said, "we were laying down." She was not able to say, when questioned, in what city or what part of the house this occurred.

She also testified to an incredible episode at a family birthday party. Several birthdays were being celebrated jointly. Testimony from other witnesses places fifteen to eighteen people in the room when they were opening presents. S.M.K. testified that, while people were all together in this room opening presents, appellant touched her with his finger. When asked if he also touched her with his penis then, she replied, "I'm not sure about that." Yet no one who was in the room at the time saw or heard anything.

S.M.K. testified to incidents on appellant's lap in Emmetsburg. They would be in the living room with others. Somehow, while she was on his lap, he would take his shorts off or get his penis out of his shorts. She said he touched her hard enough to hurt. Yet she did not react to the hurt and no one else in the room saw or heard anything. She said he was touching her every other day in Emmetsburg, pushing hard enough to hurt with his finger or penis, yet a detailed medical exam one week later revealed no evidence of stretching, scarring, or loss of elasticity such as would be expected from repeated touches hard enough to hurt.

S.M.K.'s testimony as a whole is self-contradictory, lacks experiential detail, and describes scenes, such as the birthday party, that border on the surreal. S.M.K.'s testimony lacks the probative value needed to support a guilty verdict.

Our examination of the evidence does not end with the girls' testimony. We consider all the evidence at trial, not just the evidence that supports guilt. *State v. Robinson*, 288 N.W.2d at 340. The following testimony is undisputed. The relationship between the

girls' mother and father after divorce was not good. He was delinquent in paying child support, sought to have it reduced, and asked the mother to drop the back payments. The mother had his wages garnished for child support. The father felt the children were not kept sufficiently clean or cared for properly. He mentioned filing abuse or neglect charges. Because of concern about what the father might do, the mother and appellant agreed when they married that appellant would not spank the girls, nor would he bathe them or dress them. Appellant always was careful to be dressed in the girls' presence. The girls enjoyed being with appellant and even would fight to see who would sit on his lap or kiss him goodbye. Appellant and the mother slept cuddled together. No one, other than the girls themselves, ever saw or heard appellant do or say anything that would raise any suspicion he was abusing them—even those who were in the room during the alleged episodes of abuse. Their stepmother talked to them about good and bad touches before the allegations were made. The girls now live with their father and stepmother.

We find after examining all the evidence in the light most favorable to the state that there is insufficient credible evidence for a rational jury to find appellant guilty beyond a reasonable doubt. Therefore, his conviction cannot stand. We reverse the judgment and sentence of the trial court and remand for a judgment of acquittal.

Appellant also raised claims of ineffective assistance of counsel, prosecutorial misconduct, and the prejudicial effect of cumulative errors. Because our decision on the sufficiency of the evidence is dispositive, we need not address the other issues.

**REVERSED AND REMANDED.**

HAYDEN, J., concurs.

OXBERGER, C.J., dissents.