# IN THE COURT OF APPEALS OF IOWA

No. 14-0621
Filed April 22, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOHN ROBERT SCHONDELMEYER,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Mills County, James S. Heckerman, Judge.


        John Schondelmeyer appeals from his conviction of two counts of sexual abuse of a child and two counts of lascivious acts with a child.  **AFFIRMED.**


        James Martin Davis of Davis Law Firm, Omaha, Nebraska, for appellant.

        Thomas J. Miller, Attorney General, Kelli Huser, Assistant Attorney General, Eric Hansen, County Attorney, and Tricia McSorley & Christopher J. Tinley, Assistant County Attorneys, for appellee.


        Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

John Schondelmeyer appeals from his conviction of two counts of sexual abuse of a child and two counts of lascivious acts with a child.

### I. Factual and Procedural Background

In late September 2013, Schondelmeyer babysat his four granddaughters at the request of his son, Scott, and daughter-in-law, Nicole. The two oldest granddaughters were S.S., who was eight years old, and J.S., who was seven years old. In early October, Nicole filed a police report with the Mills County Sheriff based on statements by the two older girls alleging Schondelmeyer had sexually abused them in the bed the two girls shared on the night he babysat. Based on the allegations, the State charged Schondelmeyer with two counts of second-degree sexual abuse of a child[1] and two counts of lascivious acts with a child,[2] one count of each charge relative to each of the two girls.

The case was submitted to a jury. Schondelmeyer's trial strategy was to highlight the lack of physical evidence and undermine the credibility of S.S. and J.S. In particular, Schondelmeyer intended to present evidence showing S.S. had previously falsely accused her other grandfather[3]—"Grandpa Mike"—of sexual misconduct.

---

[1] "Any sex act between persons is sexual abuse by either of the persons when the act is performed with the other person in . . . the following circumstances: . . . Such other person is a child." Iowa Code § 709.1(3) (2013). "A person commits sexual abuse in the second degree when the person commits sexual abuse under . . . the following circumstances: . . . The other person is under the age of twelve." *Id.* § 709.3(1)(b).

[2] "It is unlawful for any person sixteen years of age or older to [fondle or touch the pubes or genitals of a child] with or without the child's consent . . . , for the purpose of arousing or satisfying the sexual desires of either of them." Iowa Code § 709.8.

[3] S.S. is Scott's biological child by a different mother. The "other grandfather" S.S. previously accused was her biological mother's father.

The State called several witnesses, the first of which was the deputy to whom Nicole had submitted her police report. The deputy testified there would have been no physical evidence supporting the allegations found in the home due to the time lapse between the alleged incident and the police report. The second witness was a forensic interviewer who interviewed the girls. On cross examination, she agreed with Schondelmeyer's counsel that "it's possible kids can make things up" and "kids can be influenced."

The State's third witness was Nicole. In anticipation of Schondelmeyer's counsel questioning her about Grandpa Mike, the State moved for an order preventing that line of questioning before Nicole took the stand. The court heard Nicole's testimony first outside the presence of the jury in an offer of proof. On direct and cross examination, Nicole acknowledged that she had second-hand knowledge of S.S.'s claims involving her other grandfather. The court then questioned Nicole directly:

> Q: The girls did not come to you and say that this is what happened with respect to those allegations? A: No.
> Q: And you don't have any personal knowledge with respect to that at all as I understand your testimony; is that correct? A: That's correct.
> Q: So anything you would know would be hearsay is what you're saying? A: Yes.

The court sustained the State's motion in limine, and Schondelmeyer was prevented from asking questions about Grandpa Mike during Nicole's testimony. However, the court allowed Schondelmeyer to ask S.S. about her previous statements involving Grandpa Mike.

The State then called J.S. She described Schondelmeyer climbing into bed with J.S. and S.S. She testified:

Q: What did [Schondelmeyer] do?  A: He touched us.
. . . .
Q: Where did he touch you?  A: In the bad spots. . . .  My privates.
Q: Did he use his hand?  A: Uh-huh.
 . . . .
Q: Who else did he do that to?  A: [S.S.]
Q: Where did he touch [S.S.]?  A: Same.

On cross-examination, she testified regarding the incident:

Q: Do you know if [Schondelmeyer] was awake or asleep? A: No.
Q: You don't know either way?  A: Yeah, I don't know.
Q: He could have been asleep?  A: Uh-huh

The State's final witness was S.S.  She testified:

Q: What did [Schondelmeyer] do after he climbed into bed with you?  A: Touched our private areas.
. . . .
Q: You said [J.S.] was there?  A: Uh-huh.
Q: Did he touch [J.S.]?  A: Yes.

On cross-examination, she testified:

Q: Now have you ever had anybody else do anything like this to you?  A: No.
Q: Okay.  You never had a problem at all with Grandpa Mike?  A: No.

Following S.S.'s testimony, Schondelmeyer intended to call an impeachment witness—Sarah Schondelmeyer, Scott's sister and the girls' aunt—to impeach S.S.'s testimony that she "never had a problem" with her other grandfather.  The State had moved to exclude the testimony, and the court heard Sarah's testimony as an offer of proof outside the presence of the jury.

Sarah testified that S.S. resided with her for a time in 2011 before Scott took custody of S.S.  One day at school, "[S.S.] drew a picture and there were two naked females with breasts and vaginas and a naked male with a penis and scrotum with an X over his mouth."  According to Sarah's testimony, S.S. initially

indicated to her and S.S.'s guardian ad litem that the man depicted in her drawing was a "secret person." S.S. later told both Sarah and the guardian ad litem individually that the man in the picture was Grandpa Mike. She told Sarah that "when she and Grandpa Mike take a shower together he helps her clean her privates real good." However, "[s]he did not say that it was inappropriate or that it bothered her or anything like that." According to Sarah, as a result of S.S.'s statements regarding the picture, a no-contact order was issued against Grandpa Mike, but no charges were filed.

Based on Sarah's testimony, the district court held,

> We're here to determine whether or not this witness'[s] testimony can impeach the testimony of [S.S.]. Nothing that she can relate based upon that statement indicates that [S.S.] filed a complaint. [S.S. is] not indicating to this witness whether that was offensive, illegal, immoral or anything other than it was—that was inappropriate about that.

The court therefore excluded Sarah's testimony. Schondelmeyer then served as his own sole defense witness.

The jury found Schondelmeyer guilty on all four counts. He now appeals, claiming insufficiency of the evidence as to the charges relating to J.S. and erroneous evidentiary rulings from the district court that resulted in a violation of his constitutional right to present a defense and call witnesses.[4]

---

[4] At oral argument, Schondelmeyer's counsel discussed at length a potential additional issue: a discrepancy between the trial information—which alleged Schondelmeyer "licked [J.S.'s and S.S.'s] vaginal area[s] and inserted his tongue"—and the evidence at trial—which indicated that Schondelmeyer used his hand or finger to touch the girls. However, Schondelmeyer failed to raise this issue before the trial court and has not directly raised the discrepancy as an issue on appeal. The court's jury instruction as to sexual abuse required the State to prove Schondelmeyer performed a sex act with each victim but made no mention of the specific act described in the trial information. Schondelmeyer raised no objection to these instructions. We do not consider the

**II. Standard of Review**

We review Schondelmeyer's claim of insufficiency of the evidence for correction of errors at law. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Insofar as Schondelmeyer claims the district court's evidentiary rulings were improper, we review for an abuse of discretion, which occurs when the court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *See State v. Helmers*, 753 N.W.2d 565, 567 (Iowa 2008). Insofar as he claims the evidentiary rulings resulted in a violation of his constitutional right to present a defense, we review de novo. *See State v. Clark*, 814 N.W.2d 551, 560 (Iowa 2012).

**III. Sufficiency of the Evidence**

Schondelmeyer argues neither the sexual-abuse nor the lascivious-acts charge as to J.S. is supported by substantial evidence.[5] Upon review, we find substantial evidence in the record to support the jury's convictions on all four counts.

discrepancy between the trial information and the proof at trial now because "issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

[5] We note Schondelmeyer mistakenly refers to these two charges as "Counts III and IV" in his brief. Counts III and IV of the trial information are the two lascivious-acts charges, one as to J.S. and the other as to S.S. However, the content of Schondelmeyer's brief suggests he is challenging the sufficiency of the evidence as to Counts II and III of the trial information—i.e. the sexual-abuse and lascivious-acts charges relating to J.S. The State's brief proceeds as though Schondelmeyer objects to both lascivious-acts charges and does not address the sexual-abuse charge as to J.S. At oral argument, Schondelmeyer's counsel seemed unsure precisely which two counts he had challenged in his brief. Following oral argument, counsel filed a motion to reconcile his oral argument with his brief. To avoid the confusion that has arisen from Schondelmeyer's initial brief, we will analyze the sufficiency of the evidence supporting all four counts rather than limit our review to any two specific charges. We therefore deny Schondelmeyer's motion to reconcile.

We uphold a verdict if it is supported by substantial evidence, which is evidence that, when viewed in the light most favorable to the State, can convince a rational jury that the defendant is guilty beyond a reasonable doubt. *See Sanford*, 814 N.W.2d at 615. In analyzing whether a rational jury would be convinced, we consider all the record evidence and "all reasonable inferences that may fairly be drawn from the evidence." *Id.* (citing *State v. Keopasaeuth*, 645 N.W.2d 637, 640 (Iowa 2002)). We recognize the jury is free to reject any evidence and credit other evidence. *Id.* (citing *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006)).

Schondelmeyer's claim relies heavily on this court's decision in *State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993). In *Smith*, we found a lack of substantial evidence supporting the defendant's convictions of multiple sexual abuse charges where testimony of the three alleged victims was "inconsistent, self-contradictory, lacking in experiential detail, and, at times, border[ing] on the absurd." 508 N.W.2d at 103. However, the circumstances in *Smith* were extreme. Our supreme court distinguished *Smith* from the circumstances before it in *State v. Mitchell*, 568 N.W.2d 493, 503–04 (Iowa 1997). It noted:

> In *Smith*, the girls[, aged eleven and eight,] described incidents of abuse they said happened while the defendant's wife lay sleeping one foot away. They also testified that the abuse occurred during a birthday party while fifteen to eighteen people were in the same room, opening presents. When asked about the details, the girls responded, "I don't know" to almost all of the questions. In addition, a careful medical examination of one of the girls revealed no physical evidence of abuse although she claimed the defendant had hurt her.

*Mitchell*, 568 N.W.2d at 503 (citations omitted). In addition, the girls in *Smith* contradicted themselves and each other as to the locations and number of

instances in which they alleged they were abused. *Smith*, 508 N.W.2d at 103–05. Though the victim's testimony in *Mitchell* contained some inconsistencies, the court noted that "she never changed the operative fact that she and Mitchell had sexual intercourse." *Mitchell*, 568 N.W.2d at 503; *see also State v. Paulsen*, No. 10-1287, 2011 WL 3925699, at *4 (Iowa Ct. App. Sept. 8, 2011) (finding minor differences in witness's multiple recounts of alleged abuse overcome because the "operative fact" behind the allegation was "fundamentally consistent").

Both J.S.'s testimony and S.S.'s testimony in this case are consistent evidence of the operative facts behind the charges: Schondelmeyer touched the girls' vaginal areas while in their bed on the night he babysat the girls. Each girl's testimony corroborates the other's. While J.S.'s testimony that she was unsure whether Schondelmeyer was awake or asleep at the time may reflect upon her credibility, it does not render the testimony as a whole "absurd" or "surreal," especially given her young age. As the district court noted, J.S. simply indicated that she did not know the answer to the question; she did not assert Schondelmeyer was asleep at the time of the alleged abuse. It was then for the jury to determine the credibility of the girls' statements in their testimony. *See Mitchell*, 568 N.W.2d at 503. The jury was free to give any or no weight to J.S.'s testimony regarding Schondelmeyer's waking status.

We cannot say J.S.'s testimony or S.S.'s testimony was "so impossible and absurd and self-contradictory that it should be deemed a nullity by the court." *Smith*, 508 N.W.2d at 103 (citation omitted). J.S.'s testimony taken together with S.S.'s testimony raises at least "a fair inference of guilt as to each essential

element of the crime[s]"[6] and could convince a rational jury that Schondelmeyer was guilty beyond a reasonable doubt. *See State v. McCullah*, 787 N.W.2d 90, 93 (Iowa 2010). The jury's convictions were supported by substantial evidence. We decline to disturb the jury's determination on any of the four counts.

## IV. Impeachment Evidence

Schondelmeyer also argues the district court improperly excluded his impeachment evidence and in so doing denied him his constitutional right to present a defense. First, he argues Sarah's testimony regarding S.S.'s drawing of Grandpa Mike and S.S.'s attendant statements to her was admissible as a prior false allegation of sexual assault. *See State v. Alberts*, 722 N.W.2d 402, 409 (Iowa 2006) ("[P]rior false claims of sexual activity do not fall within the coverage of our rape-shield law."). We disagree. Such evidence is subject to strict procedural requirements under our rape-shield law, and Schondelmeyer failed to file the required written motion.[7] Nor did he present any proposed

---

[6] The elements of sexual abuse as described in the jury instructions are: (1) the defendant's performance of a sex act with J.S.; and (2) J.S. was under twelve years old. The second element is self-evident and not contested. The first element is established by testimony from both J.S. and S.S. that Schondelmeyer climbed into the girls' bed and touched J.S.'s vaginal area. The elements of lascivious acts with a child as described in the jury instructions are: (1) the defendant's fondling or touching of J.S.'s pubes or genitals; (2) the defendant's specific intent to arouse or satisfy the sexual desires of the defendant or J.S.; (3) the defendant was eighteen years old or older; (4) J.S. was fourteen years old or younger; and (5) the defendant and J.S. were not married. The latter three elements are self-evident and not contested. The first element is the subject of direct testimony from both J.S. and S.S. That same testimony can fairly give rise to a reasonable inference of specific intent to arouse or satisfy a sexual desire.

[7] *See Alberts*, 722 N.W.2d at 409–10 n.3 (holding the procedural requirements of the rape-shield law—Iowa Rule of Evidence 5.412—also applies "to allegedly false claims of sexual conduct"); Iowa R. Evid. 5.412(c) (requiring a written motion not later than 15 days prior to trial that includes a written offer of proof). Schondelmeyer filed his witness list four days before trial and did not indicate that Sarah's testimony would be offered to establish a false claim of past sexual conduct or move to have such testimony admitted. His own failure to comply with procedural requirements, which are in place to manage

evidence indicating falsity of S.S.'s statements or drawing. *See id.* ("[I]t is imperative that a claim of sexual conduct (or misconduct) by the complaining witness be shown to be false before it is admissible at trial.").

Schondelmeyer also argues Sarah's testimony was admissible to impeach S.S.'s credibility. *See* Iowa Rs. Evid. 5.607, .613; *see also State v. Odem*, 322 N.W.2d 43, 45 (Iowa 1982) ("It is proper for a party to contradict and discredit an adverse witness by showing the facts to be other than as testified to by such witness."). S.S.'s two relevant statements were a denial she "ever had anybody else do anything like this to [her]" and a claim she "never had a problem at all with Grandpa Mike." The district court identified the issue as whether Sarah's testimony could impeach S.S.'s testimony. It answered that question in the negative.

We agree with the district court. Testimony about the picture S.S. drew at school is irrelevant as it pertains to her statements at trial that nobody else had sexually abused her in the past. Neither does the picture bear upon whether she had a "problem" with Grandpa Mike. Sarah's testimony therefore does not render "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [testimony]." Iowa R. Evid. 5.401.

Schondelmeyer's claim that he offered the evidence for the purpose of impeaching S.S.'s testimony by prior inconsistent statement is belied by his brief. In it, he states he wished to place Sarah's testimony before the jury so it could

---

the delicate public policy behind the rape-shield law, does not implicate a violation of his constitutional rights by the district court.

consider that S.S. "[made] allegations of sexual misconduct against one grandfather, and then a mere two years later [made] allegations against another grandfather." This purported goal is not the impeachment of S.S.'s testimony at trial; S.S. did not testify as to whether she had previously made allegations against Grandpa Mike. The district court properly excluded Sarah's testimony, but it did instruct the jury on prior inconsistent statements made by witnesses under oath.

Schondelmeyer goes on to claim that the exclusion of Sarah's testimony deprived him of his constitutional right to present a defense. *See Washington v. Texas*, 338 U.S. 14, 18–19 (1967); *State v. Fox*, 491 N.W.2d 527, 530–31 (Iowa 1992). We do not agree. The circumstances that have given rise to a finding of such a deprivation in our case law are more extreme than those before us now. These cases typically involve either the court or the prosecution intimidating a witness until the witness elects not to testify or involve an indigent defendant who is denied funds to prepare a necessary element of his defense. *See, e.g.*, *Washington*, 338 U.S. at 23; *State v. Coker*, 412 N.W.2d 589, 592–93 (Iowa 1987).

Schondelmeyer is constitutionally entitled to present his defense, but that entitlement does not permit him to do so with no regard for our rules of evidence. In this case, Schondelmeyer was not categorically prohibited or prevented from challenging S.S.'s credibility. Nor was Sarah discouraged from testifying by the court or the State. Rather, Schondelmeyer simply was not permitted to use testimony that was not relevant for its proffered purpose as a method of presenting his defense. It is not the case that Schondelmeyer was, as he claims,

"completely foreclose[d]" from challenging the girls' credibility. We find no constitutional violation on the facts of this case.

## V. Conclusion

We find there is substantial evidence to support the jury's convictions as to the all four charges. We find the district court properly excluded Sarah's testimony as it was not admissible as an exception to our rape-shield law nor was it admissible to impeach S.S.'s testimony. Schondelmeyer was not constitutionally deprived of his right to present a defense by the district court's evidentiary rulings. We affirm.

**AFFIRMED.**