# IN THE COURT OF APPEALS OF IOWA

No. 17-1336
Filed October 10, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**SEAN MICHAEL HILLIARD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Monica L. Wittig,

Judge.

        Sean Hilliard appeals his conviction for sexual abuse in the second degree.

**AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant

Appellate Defender, and Nicholas A. Jones (until withdrawal), Law Student, for

appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney

General, for appellee.

        Considered by Vogel, P.J., Tabor, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**VOGEL, Presiding Judge.**

Sean Hilliard appeals his conviction for sexual abuse in the second degree. Through his appellate counsel, he argues his trial counsel was ineffective on several grounds. In a pro se brief, he also argues his jury was not drawn from a fair cross-section of the community and the evidence is insufficient to support his conviction. We find the evidence is sufficient to support his conviction, he did not preserve his jury-composition argument, and we cannot evaluate his ineffective-assistance claims on the record before us. Therefore, we affirm his conviction and preserve his ineffective-assistance claims for potential postconviction proceedings.

## I. Background Facts and Proceedings

On July 24, 2016, S.C., who was eight years old at the time, went to Hilliard's home in Dubuque for a playdate with Hilliard's son. S.C. attended a summer program with Hilliard's son, and Hilliard was a coach for this program. The playdate was originally planned for a few hours, but S.C. spent the night after Hilliard told S.C.'s mother he could not find a ride that night. S.C. slept in Hilliard's home that night with Hilliard, his son, and another male described as the son's uncle.[1]

Hilliard lived in a one-bedroom apartment, which S.C. described as "[o]ne room with everything." The room contained two beds side-by-side. At a certain point in the night, the group began playing video games, including a game S.C.'s mother explicitly forbade him from playing. After playing video games, S.C. and

---

[1] In his interview with police, Hilliard referred to the other male as his friend. Although the relationship is unclear, we will refer to the other male as an "uncle."

Hilliard watched a zombie movie and a samurai movie while in one bed. Hilliard's son and the uncle slept in the other bed during the movies. S.C. testified that during one of the movies Hilliard put his hand under S.C.'s clothes, touched S.C.'s "privates,"[2] moved his hand on S.C.'s privates like he was "trying to grab it off," and put his mouth on S.C.'s privates. S.C. further testified Hilliard removed his hand after S.C. told him to stop three or four times and that Hilliard later said to keep the touching a secret. On cross-examination, S.C. testified Hilliard tickled him before touching his privates, which made him laugh, but Hilliard's son and the uncle never woke during the incident.

Hilliard returned S.C. to his home on the morning of July 25. Hilliard told S.C.'s mother that he had been up all night playing video games. The mother believed S.C. had been suspended from his summer program, so he stayed home with her that day.[3] S.C. slept most of the morning, but his mother thought he acted normal that afternoon. Early that evening, S.C. suddenly stopped in a doorway with an expression that his mother described as having "something horrid inside of him that he needed to say." S.C. testified he then told his mother that Hilliard "told me a secret I can't tell, and she asked why, and I said, I can't tell, and then that's when I told her, and the secret." The mother made S.C. take a shower "to get all that dirt and disgust off of him," and she took him to the police that night to file a report. On August 5, S.C. spoke to Rachel Haskin, a forensic interviewer

---

[2] S.C. later clarified Hilliard touched the "part of your body you use to pee."
[3] S.C.'s mother testified the program director later told her he was not suspended that day, though ultimately she did not know if he truly had been suspended that day.

who works with children who report abuse. On August 18, Hilliard voluntarily spoke to Dubuque Police Officer Chris Gorrell.

On September 21, 2016, the Dubuque County Attorney filed a trial information charging Hilliard with sexual abuse in the second degree. On May 16, 2017, his jury trial began. On May 18, the jury convicted him of sexual abuse in the second degree. On July 14, he filed a motion for new trial and a motion in arrest of judgment raising insufficient-evidence and jury-composition claims, which the court denied. The court ultimately sentenced him to a term of incarceration not to exceed twenty-five years plus fees, costs, and additional terms. He now appeals, raising his ineffective-assistance claims through his appellate counsel and his jury-composition and insufficient-evidence claims in his pro se brief.

## II.     Standard of Review

"We review claims of ineffective assistance of counsel de novo." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). We review constitutional issues regarding jury composition de novo. *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017). We review insufficient-evidence claims for correction of errors of law. *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013).

## III.    Ineffective Assistance of Counsel

Hilliard, through his appellate counsel, claims his trial counsel was ineffective for several actions: (1) failing to redact a video recording of Hilliard's interview with Officer Gorrell; (2) failing to request limiting instructions regarding the recorded police interview; (3) stipulating to admission of a recording of S.C.'s interview with Haskin; and (4) failing to object to testimony as improper vouching.

He also claims the cumulative effect of these errors undermines confidence in the outcome of his trial.

To show ineffective assistance of counsel, the defendant must prove "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *Clay*, 824 N.W.2d at 495. "There is a presumption the attorney performed his duties competently. The claimant successfully rebuts this presumption by showing a preponderance of the evidence demonstrates counsel failed to perform an essential duty." *Id.* "[W]e rarely address ineffective-assistance claims on direct appeal and instead preserve such claims for postconviciton relief." *State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006). "Because '[i]mprovident trial strategy, miscalculated tactics, and mistakes in judgment do not necessarily amount to ineffective assistance of counsel,' postconviction proceedings are often necessary to discern the difference between improvident trial strategy and ineffective assistance." *Id.* (quoting *State v. McKettrick*, 480 N.W.2d 52, 55 (Iowa 1992)); *see also State v. Coil*, 264 N.W.2d 293, 296 (Iowa 1978) ("Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned.").

On the record before us, we cannot fully evaluate the complained of actions, either individually or cumulatively, and we preserve all of his ineffective-assistance claims for potential postconviction proceedings.

### IV.    Jury Composition

Hilliard argues the jury composition violated his constitutional right to an impartial jury comprised of his peers. According to his pro se brief, he is African-American but his jury venire contained no African-Americans. In order to preserve

error, a criminal defendant must object to the composition of the jury panel "at the earliest opportunity." *State v. Johnson*, 476 N.W.2d 330, 333 (Iowa 1991). Hilliard first raised his jury-composition claim in his post-trial motion, which is too late to preserve error. *See id.* ("Defendant had ample opportunity to view the jury panel during the jury selection process, but failed to object to it during this time or even during trial. Defendant cannot now urge a ground for reversal in his post-verdict motion not urged during trial."). Therefore, he has waived his jury-composition argument on appeal.

Hilliard also raises his jury-composition argument as an ineffective-assistance claim. The Sixth Amendment to the United States Constitution guarantees the criminally accused the right to an impartial jury, which includes "a jury drawn from a fair cross-section of the community." *Plain*, 898 N.W.2d at 822 (citing *Taylor v. Louisiana*, 417 U.S. 522, 530 (1975)). To establish a violation of the fair cross-section requirement, a criminal defendant must make a prima-facie showing by satisfying a three-prong test:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* at 822 (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). The record before us is insufficient to satisfy any of these prongs.[4] In particular, the record contains no mention—other than conclusory statements in motions and other filings—of the

---

[4] In a hearing on Hilliard's post-trial motion, the State stipulated he belongs to a distinctive group as an African-American, thus satisfying the first prong.

racial composition of the jury venire or the community as a whole, nor does the record show systemic exclusion of African-Americans in the community from the jury-selection process. *See id.* Without a more complete record, we cannot evaluate whether Hilliard's counsel failed to perform an essential duty in not challenging the composition of the jury. Therefore, we also preserve his jury-composition claim for possible postconviciton proceedings. *See Ondayog*, 722 N.W.2d at 786.

## V. Sufficiency of the Evidence

Finally, Hilliard argues the evidence is insufficient to support his conviction for sexual abuse in the second degree. *See* Iowa Code § 709.3(1)(b) (2016) (defining "sexual abuse in the second degree" to include circumstances when a person commits sexual abuse and "[t]he other person is under the age of twelve"); *see also id.* § 709.1(3) (defining "sexual abuse" to include "[a]ny sex act between persons" when the "other person is a child"). Specifically, he argues the evidence is insufficient to show he performed a sex act on S.C. *See id.* § 702.17(2), (3) (defining "sex act" to include "[c]ontact between the mouth and genitalia" and "[c]ontact between the finger or hand of one person and the genitalia . . . of another person").

The essential question when evaluating the sufficiency of the evidence "is whether there was substantial evidence to support a guilty verdict beyond a reasonable doubt." *Kern*, 831 N.W.2d at 158. S.C. testified at trial that Hilliard touched his genitalia with both his hands and his mouth. His trial testimony—that Hilliard touched him late at night while watching movies—was generally consistent with his recorded forensic interview months earlier. S.C. also testified he told his

mother about the touching the next evening. His mother testified he acted unusual and had a pained expression before he told her of the touching. His mother took S.C. to the police to file a report that night. S.C.'s testimony and this supporting testimony provides substantial evidence to support Hilliard's conviction. *See id.*

Hilliard argues S.C.'s testimony is "so impossible and absurd and self-contradictory that it should be deemed a nullity by the court." *State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993) (quoting *Graham v. Chi. & Nw. Ry. Co.*, 119 N.W. 708, 711 (Iowa 1909); *see also id.* ("In the present case the only evidence against appellant is the statements and testimony of the three girls. When read separately or together, the accounts of alleged abuse are inconsistent, self-contradictory, lacking in experiential detail, and, at times, border on the absurd."). However, witness credibility is normally a matter for the factfinder. *Id.* at 102. While S.C. lacked the focus of an adult, his testimony was not so inconsistent or unbelievable that it must be nullified as a matter of law. As noted above, S.C. consistently testified Hilliard touched S.C.'s genitalia with his hand and mouth while watching movies, and this testimony was generally consistent with the earlier forensic interview. Hilliard points to the lack of physical evidence or other eyewitness accounts of sexual abuse. He also notes S.C. testified he laughed immediately before the touching and then repeatedly told Hilliard to stop while Hilliard's son and the uncle slept through the commotion a few feet away. These arguments go toward witness credibility, and Hilliard made these arguments at trial. The jury accepted S.C.'s testimony about the touching as credible, as they are entitled to do. *See id.*

**VI.    Conclusion**

Sufficient evidence supports Hilliard's conviction for sexual abuse in the second degree, and the record is inadequate to evaluate his ineffective-assistance claims.    Therefore, we affirm his conviction, and we preserve his ineffective-assistance claims for potential postconviction proceedings.

**AFFIRMED.**