# IN THE COURT OF APPEALS OF IOWA

No. 23-2090
Filed December 18, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CALEB JEFFREY FAIRCHILD,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Madison County, Michael Jacobsen,

Judge.


        The defendant appeals his convictions for three counts of sexual abuse in

the second degree and one count of indecent contact with a child.  **AFFIRMED.**


        Nick Sarcone of Babich Sarcone, P.L.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Joshua A. Duden, Assistant Attorney

General, for appellee.


        Considered by Greer, P.J., and Buller and Langholz, JJ.

**GREER, Presiding Judge.**

After allegations surfaced of sexual conduct involving child-care employee Caleb Fairchild and two young children, a jury found Fairchild guilty of three counts of sexual abuse in the second degree, in violation of Iowa Code sections 709.1 and 709.3(1)(b) (2019), and one count of indecent contact with a child, in violation of Iowa Code section 709.12(1)(a). Fairchild appeals, alleging the district court impermissibly admitted hearsay statements of one of the child victims during the testimony of the child's mother and that there was insufficient evidence underlying the convictions involving both child victims. Because the statements were not hearsay since they were not intended to prove the matter asserted and Fairchild failed to preserve the record on his objection to the statements in any event, we find the district court did not err in allowing the testimony. On the challenge to sufficiency of the evidence, the evidence supporting the convictions is substantial, so we affirm.

## I. Background Facts and Proceedings.

Fairchild was a daycare provider at Young Explorers (the Center), a childcare facility, from 2019 to August of 2021. At the Center, Fairchild was a "floater," or an employee who assisted other employees when and where there was a need. Although Fairchild assisted where there was a need, he mostly found himself working with ages three years and older.

In 2019, seven-year-old child, L.O., and L.O.'s mother were:

> reading a book, and we were talking about good touch, bad touch, kind of and I was telling him, like, nobody should be touching—you know, like in this scenario, we were talking—like they call it the swimsuit area kind of thing, your privates, whatever you want to call it, and he said, "You mean like Caleb?" . . . I'm like, "Well, who's

Caleb?" And he's like, "You know, the worker." . . . I'm like—my gut kind of sunk, and I said, "Well, what happened?" And he had stated that they were out on the playground, and he swung up and hit him in the genital area.

L.O.'s mother reported the concerns to the owner and director of the Center, specifically that L.O. was "hit from the outside of the clothes" by Fairchild. At first the mother and director thought it might be "horseplay" between L.O. and Fairchild. The director; assured L.O.'s mother that it would not happen again. But, at trial, the mother testified:

> Q. About how much later was another incident reported? A. I asked [L.O.], just to touch base with him again, maybe a week or two later, and he said—I said, "How's things going? Has anything come up?" And he said, "Actually, Mom, yes."
> Q. Okay. And based on what he told you then, what did you think? Did that change your opinion from horseplay— A. 100 percent.

At this point, L.O.'s mother, once again, contacted the director again and called the Iowa Department of Health and Human Services (the department) to report the allegations. L.O. stopped going to the Center in November. Although the department interviewed Fairchild, no further investigation followed. Fairchild continued to work for the Center. He left the Center in August 2021.

Then in May 2022, another child who had attended the Center in 2019, C.M., told his mother that Fairchild had touched him inappropriately. The allegations involved touching C.M.'s buttocks and penis. C.M.'s mother contacted the police. The police started an investigation that included interviewing Fairchild, and both children underwent forensic interviews at Blank Children's STAR Center. Charges were filed following this investigation.

The first jury trial ended in a mistrial, but after retrial the jury found Fairchild guilty of all four counts. Fairchild was sentenced in December 2023.

## II. Discussion.

Fairchild appeals his conviction, alleging the admission of statements made by L.O. to his mother was improper, as the statements were hearsay not admissible under any exception. He also argues the testimony of the complaining child witnesses was inconsistent and uncorroborated, warranting a finding of insufficient evidence that he committed a sex act against either of them. We address both of his claims.

### a. Admission of Alleged Hearsay Evidence.

Fairchild argues the mother's testimony of the first conversation that L.O. had with his mother about Fairchild touching him should not have been allowed into evidence, as this testimony constituted inadmissible hearsay. "'Hearsay' means a statement that: (1) The declarant does not make while testifying at the current trial or hearing; and (2) A party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). We generally review evidentiary rulings for an abuse of discretion. *See State v. Wilson*, 878 N.W.2d 203, 210 (Iowa 2016). "An abuse of discretion occurs when a district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* at 210–11. "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber v. City of Ankeny*, 616. N.W.2d 633, 638 (Iowa 2000). "Although we generally review a court's decision to admit or exclude

evidence for an abuse of discretion, we review a hearsay claim for correction of errors at law." *State v. Neitzel*, 801 N.W.2d 612, 621 (Iowa Ct. App. 2011).

Here, the district court did not rule on Fairchild's initial hearsay objection after the State countered that the statements were admissible under the excited utterance exception. *See* Iowa R. Evid. 5.803(2). The court responded, "If you want to try and establish that it's excited utterance, you may ask further questions." *See State v. Dudley*, 856 N.W.2d 668, 680 (Iowa 2014) ("The rationale underlying the 'excited utterance' exception is 'that the excitement of the event limits the declarant's capacity to fabricate a statement and thereby offers some guarantee of its reliability.'"). In making that record, L.O.'s mother testified about how she first learned of the inappropriate touching as she read the book about good and bad touch to L.O. without any objection from Fairchild. After that testimony, when the prosecutor had moved on to asking the mother questions about how she felt about L.O.'s statements, Fairchild again objected, and the following discussion occurred:

> FAIRCHILD: Objection, Your Honor. The—hearsay was never—excited utterance was never established, and no ruling's been made on that at this point.
> COURT: Well, he moved on to other questions. I didn't hear any further objections from you regarding that.
> FAIRCHILD: All right, Your Honor. Thank you.
> STATE: Your Honor, I'd just like to also add I didn't ask any questions that would elicit any hearsay either. Thank you.
> COURT: Go ahead.

Before we consider the merits of Fairchild's argument, we note the State concedes on appeal that L.O.'s statements did not constitute an excited utterance. So, the State turns to three arguments supporting the admission of the statement. First, the State urges that Fairchild did not preserve error. Second, the State asserts the statement was not hearsay as it was not offered for the truth of the

matter but to show evidence of the mother's reaction to the information and the steps she took to address the situation at the Center. And third, the State contends any admission of this statement was harmless and not prejudicial to Fairchild because of other similar evidence presented at trial without objection.

"The preservation of error doctrine is grounded in the idea that a specific objection to the admission of evidence be made known, and the trial court be given an opportunity to pass upon the objection and correct any error." *State v. Brown*, 656 N.W.2d 355, 361 (Iowa 2003). If the court is not given an opportunity to address an objection, then the issue is waived. *See State v. Meyers*, 799 N.W.2d 132, 147 (Iowa 2011) ("Issues on appeal not raised in the district court are deemed waived.") "The general rule is that where an objection is sustained, it must be repeated each time similar testimony is offered by the opposing party." *State v. Dessinger*, 958 N.W.2d 590, 599 (Iowa 2021). When the questions by the State led to a response that included hearsay, Fairchild was required to object at that point to preserve error and ask that the jury not consider the evidence. Error was not preserved.

But even if it had been, we would find the State's third argument to be persuasive. The mother testified that L.O. "stated that they were out on the playground, and [Fairchild] swung up and hit him in the genital area." Assuming it was hearsay, "[t]here are two distinct tests to apply to determine whether the admission of inadmissible testimony is non-prejudicial or harmless under the two rules. In the hearsay context, 'where substantially the same evidence is in the record, erroneously admitted evidence will not be considered prejudicial.'" *Brown*, 656 N.W.2d at 361 (citation omitted). Here, substantially similar detail was

provided in L.O.'s specific testimony about the touching and by Fairchild in his interview with the police. Likewise, the Center's director testified to the results of the internal investigation into L.O.'s initial complaint, stating Fairchild characterized his actions involving the child as "roughhousing." Fairchild did not suffer prejudice from the admission of the statement made by L.O., and thus it is not a ground for reversal.

**b. Sufficiency of the Evidence.**

Fairchild contends that the evidence, presented primarily from child witnesses, was insufficient to prove he committed a sex act. We review challenges to the sufficiency of the evidence for errors at law. *State v. Dalton*, 674 N.W.2d 111, 116 (Iowa 2004). When assessing sufficiency-of-the-evidence challenges, we review the record "in the light most favorable to the State." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). The State is entitled to "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted). It is not the court's purview to weigh the credibility of witnesses and resolve factual issues; such assessments are reserved for the jury. *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005). If we find the record shows substantial evidence, we are bound by the jury's verdict. *State v. Mong*, 988 N.W.2d 305, 312 (Iowa 2023).

To start, Fairchild argues that because each of the complaining child witness's testimony was (1) inconsistent and (2) unsupported by corroborating testimony or other evidence, no reasonable fact finder could find the testimony credible. Yet, as Fairchild points out in his brief, "Believed by the district court or the jury, L.O. and C.M.'s testimony alone could be substantial proof of sexual

abuse." *See State v. Duran-Sierra*, No. 21-1312, 2023 WL 2148743, at *2 (Iowa Ct. App. Feb. 22, 2023); *see also State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995). Any deficiency in corroborating testimony is only significant if a reasonable fact finder could not find the child's testimony credible. So Fairchild pivots to the argument that "there is a gaping absence of any evidence beyond the vague and inconsistent testimony of the alleged victims," rooting his argument in *State v. Smith*, 508 N.W.2d 101 (Iowa Ct. App. 1993). In the more than thirty years since it was decided, *Smith* has become an anomaly in our case law:

> *Smith* is an outlier case. It has been criticized in the commentary, and it has not been followed in any sexual abuse case in Iowa since. The primary flaw in *Smith* is that it is inconsistent with the standard of appellate review of jury verdicts, which requires that the evidence be viewed in the light most favorable to the verdict and which requires deference to the jury's resolution of disputed factual issues.

*State v. Trane*, 984 N.W.2d 429, 436–37 (Iowa 2023) (quoting *State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022)). This court has described the circumstances related to the reporting in *Smith* as "extreme." *State v. Schondelmeyer*, No. 14-0621, 2015 WL 1817030, at *3 (Iowa Ct. App. Apr. 22, 2015). And, "*Smith* draw[s] on archaic concepts about sexual abuse to support its decision, but it also glossed over the gatekeeping concepts that must frame our analysis." *State v. Showers*, No. 23-0390, 2024 WL 2317709, at *5 (Iowa Ct. App. May 22, 2024); *see id.* (providing examples of cases where sufficient evidence was found in sex abuse cases based on child victim testimony). During trial, both children, who were then twelve years old, testified. L.O. reported Fairchild would touch his penis and testicles over his clothes or through "my pocket," roughly "three times a week." L.O. stated that Fairchild told him not to tell

anyone. Fairchild would have the child sit next to him and give L.O. his phone, allowing the child to watch videos or play games. Fairchild would then fondle the child's genitalia for "five, ten minutes." L.O. also testified to other statements made by Fairchild:

> Q. Did the defendant ever tell you that something would happen to your body as a result of him touching you? A. Yes.
> Q. What did he say? A. I don't feel comfortable saying it.
> Q. Okay. Was it—without actually saying it, would it have been something beneficial to your body? A. Yes.
> Q. In what way? A. Bigger.

Like L.O.'s description of events, C.M. reported that Fairchild would give C.M. his phone to play games on as a distraction. Once C.M. was engrossed in a game on his phone, Fairchild would reach down into C.M.'s clothes and, with "skin-to-skin" contact, touch his testicles and butt cheeks—"squishing them." C.M. reported the touching happened "a couple times a day. One or two, usually." Fairchild told C.M. to "keep . . . secrets." And as to both children, Fairchild singled them out for phone use and gave them snacks, separate from the other children.

Fairchild centers his argument on a theme that the children failed to provide sufficient detail about the touching and that they, instead, provided "inconsistent" testimony. We see this primarily as a credibility argument, and the fact finder's function was to determine the witnesses' credibility, which it did here. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). And as far as the lack of detail over specific words used, "such uncertainty or lack of detail from a child witness is no surprise." *State v. Wilde*, 987 N.W.2d 486, 495 (Iowa Ct. App. 2022). Again, the fact finder could weigh the imprecision of words used along with the children's demeanor, age, and other testimony.

Going to the inconsistencies in the testimony, we find them to be minimal in the context of the full description of what the children presented. As for L.O.'s testimony, Fairchild points to an inconsistency in the previous report to the daycare in 2019 and the trial testimony about where Fairchild touched the child. But in L.O.'s trial testimony, his description of being touched in his "private area" along with other detailed testimony provided sufficient evidence of the elements to be proved. And fact finders weigh that testimony against any inconsistency.

Finally, Fairchild argues C.M. was inconsistent on whether he touched the child "through his clothes" or if the contact was skin-to-skin. In reviewing the testimony of the child, we do not see any inconsistency from the testimony that C.M. provided as he confirmed that Fairchild reached *through* his clothes and touched his genitalia or buttocks, undercutting any allegation of conflicting testimony.

Testimony from children need not be exacting to be sufficient to support a conviction. "Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a jury to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict." *State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021). And here, the inconsistencies in the testimony of the children were minimal, and the descriptions given, along with the consistency of the pattern of Fairchild's behavior towards each of them, provided substantial evidence for the convictions.

## III. Conclusion.

We affirm the convictions.

**AFFIRMED.**