# IN THE COURT OF APPEALS OF IOWA

No. 23-1140
Filed February 5, 2025

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ROBERT ALLEN FISHER JR.,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Justin Lightfoot, Judge.

A criminal defendant challenges the sufficiency of the evidence supporting his conviction. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Michelle E. Rabe (until withdrawal) and Maria Ruhtenberg, Assistant Appellate Defenders, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Greer, P.J., Schumacher, J., and Carr, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**CARR, Senior Judge.**

Robert Allen Fisher Jr. appeals his conviction for sexual abuse in the second degree, challenging the sufficiency of the evidence. Finding substantial evidence supports the conviction, we affirm.

## I. Background Facts and Proceedings

In March 2023, the district court held a bench trial of Fisher considering two charged offenses. The district court issued a thorough, detailed opinion, evincing a careful consideration of the evidence and law. The court found Fisher guilty of sexual abuse in the second degree perpetrated against the minor child L.L. and not guilty of the second offense. We therefore limit our facts to those relevant to the appealed conviction.

From 2012 to 2015, Fisher was in a romantic relationship with A.L., and lived with her and her two children: S.L. and L.L. L.L. was between three and six years old. The children would stay home with Fisher while their mother was at work. L.L. testified when she was "five, six, or seven," she and Fisher would go to her bedroom, he would pull down his pants and his underwear, sit on the floor with his legs in front of him with her next to him, touch his private parts, and then touch hers. She described seeing Fisher's hand move on himself and what he called "happy juice" coming out. She further explained when Fisher touched her it was skin-to-skin. Fisher's touching of her genital area made L.L. need to urinate. When her mother got home from work, they would stop, get dressed, and go out acting like nothing happened. L.L. could not remember how far down Fisher pulled his pants, or whether he used one or two hands. But she did remember Fisher making threats about hurting her and her mother.

L.L. said one time when Fisher was touching her, S.L. came into the bedroom and Fisher told him to pull down his pants, which he did. But S.L. then redressed and "left awkwardly." S.L. also testified, describing Fisher leaning against a mattress pulled over the bed frame and touching himself, telling S.L. to take off his clothes, and L.L. was also in the room.

When L.L. was ten or eleven years old, she told her mother what Fisher had done because it was "eating at" her and making her anxious. At trial, the mother was able to recall a time she got home early, Fisher "came bolting out" of their home, "hiking up his pants, hopping on one foot onto the porch"—which she characterized as "really strange behavior" for Fisher. L.L. was pulling up her pants when the mother entered the house, but said nothing was going on, she was just getting dressed. The mother was clear, though, that she never witnessed Fisher perpetrating any sexual abuse.

Fisher testified, categorically denying perpetrating any sexual abuse. Fisher, who has been obese since before the relevant time period, told the court he usually will not sit on the floor because "it's harder to get up." He demonstrated for the court the effort it took to sit on the floor and to get back up, and stated it was "physically impossible" for him to sit on the floor and masturbate due to a fat pouch engulfing his penis while sitting. Fisher also shared with the court he has not worn underwear for many years because it causes chafing.

In a thorough written ruling, the court convicted Fisher of committing a sex act upon L.L. between January 1, 2013 and December 31, 2014. The court expressly stated it "found L.L.'s testimony to be credible," specifically noting her appearance and demeanor, her behavior on the stand, the age-appropriateness

of her answers, and her admitting and not answering questions when she did not remember. The court considered and discussed all the evidence presented before reaching its conclusion Fisher committed second degree sexual abuse.

Fisher appeals.

## II. Standard of Review

In considering a challenge to the sufficiency of the evidence proving a conviction, we review for a correction of errors at law. *State v. Fenton*, 13 N.W.3d 573, 577 (Iowa 2024). "In jury-waived cases, the findings of fact have the effect of a special verdict and are binding on us if supported by substantial evidence." *State v. Fordyce*, 940 N.W.2d 419, 425 (Iowa 2020) (internal citations omitted). "[W]e view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Fenton*, 13 N.W.3d at 577 (cleaned up).

## III. Discussion

Fisher's sole argument on appeal is L.L.'s testimony was "so inconsistent, vague, and unreliable that th[e] court should deem it insufficient as a matter of law to support Fisher's conviction." *See State v. Smith*, 508 N.W.2d 101, 103 (Iowa Ct. App. 1993). Fisher acknowledges recent supreme court cases have criticized *Smith*, but he insists "it remains controlling law" in the absence of an opinion expressly overruling it. The supreme court has noted *Smith* is "inconsistent with the standard of appellate review" requiring "deference to the [factfinder]'s resolution of disputed factual issues." *State v. Mathis*, 971 N.W.2d 514, 518 (Iowa 2022). Without expressly overruling *Smith*, the court noted even that

standard required "fatal contradictions or deficiencies" in the victim's testimony to afford any relief.

The details Fisher challenges in L.L.'s testimony include the vague timeframe of the abuse and lack of specific details, the frequency of abuse, the delay in reporting, a claim L.L. was remembering abuse by an unnamed other person, lack of corroboration by the mother, and an assertion L.L. could not be describing his actions because he does not wear underwear and is physically unable to complete the described events due to the size of his stomach and penis. None of these arguments are persuasive.

"Inconsistencies and lack of detail are common in sexual abuse cases and do not compel a [factfinder] to conclude that the victim is not credible or that there is insufficient evidence to support a guilty verdict." *State v. Donahue*, 957 N.W.2d 1, 11 (Iowa 2021); *see also State v Parker*, No. 22-0491, 2023 WL 7391664, at *2 (Iowa Ct. App. Nov. 8, 2023) ("We do not require total precision from the victim's testimony."). L.L. was very young at the time of the abuse, and several years had passed between when the abuse occurred and the trial. L.L.'s testimony provided details describing who, what, where, and generally when the abuse occurred. We do not require photographic memory and recitation by victims to find them credible. As to the frequency of abuse, the court only needed to find one instance of abuse occurred during the time frame charged and, based on the court's credibility finding, there was more than sufficient evidence to convict him of at least one instance. Nor did the court consider the delay in reporting as a strike against L.L.'s credibility—rather, the court found L.L. would have no reason to even think about Fisher anymore by the time she reported the abuse, and L.L. "was likely

intimidated" by Fisher due to the difference in their size and the threat of harm he directed at her and her mother. We defer to the court's credibility finding. We also note L.L.'s mother had remarried when she made the first disclosure, and she may have felt protected enough to report despite Fisher's threats.

The mother's general lack of corroboration is understandable, given L.L.'s testimony the abuse always occurred when the mother was at work. But S.L. provided corroborating testimony, and "[a] sexual abuse victim's testimony alone may be sufficient evidence for conviction." *Donahue*, 957 N.W.2d at 10–11; *see also State v. Kraai,* 969 N.W.2d 487, 490–91 (Iowa 2022) (discussing the history of corroboration of victims of alleged sexual abuse and noting none is required) And the district court carefully considered the testimony of the mother and S.L., finding them partially corroborating at best. But the court was "firmly convinced that L.L.'s testimony is credible and truthful," and the State had proven the elements of sexual abuse in the second degree beyond a reasonable doubt. The lack of full corroboration on events only witnessed by L.L. and Fisher does not diminish L.L.'s credibility.

Finally, Fisher's underwear argument and his assertion he was physically unable to perpetrate the abuse do not persuade us we should overturn the court's ruling. The district court concluded the existence (or not) of Fisher's underwear was not significant in L.L.'s recitation of events and she had no specific recollection relating to it. Instead, L.L. admitted she did not remember the details of where Fisher's pants and underwear were during the abuse. We also agree with the district court's analysis of Fisher's physical capability for the abuse. Fisher's demonstration of the effort to get up from sitting on the floor took "less than five

seconds," even while wearing shackles. More, the court observed S.L.'s presence in the living room and the description of L.L.'s bedroom meant "the floor was the only option."

As was the case in *Mathis*, we discern "no fatal contradictions or deficiencies in either [victims'] testimony." *See* 971 N.W.2d at 518. Ultimately, any conflicts of evidence, witness credibility, and discrepancies or contradictions are for the fact finder to resolve, not for us to determine anew. *See id.* The district court did just that, and we find no reversible error in this record.

**AFFIRMED.**